CITIZENS INSURANCE COMPANY OF AMERICA v TUTTLE

Docket No. 65132. Argued April 7, 1981 (Calendar No. 5).—Decided August 24, 1981.

Citizens Insurance Company of America brought an action in tort against Donald Tuttle to recover the cost of repairs paid by Citizens to its insured for damages to a tractor and trailer after a collision with Tuttle's cow which was running loose on US 2 in Schoolcraft County. The complaint alleged violation of the statute prohibiting allowing an animal to run at large and a second count of negligence. The insured owner of the truck, Zaiger Beverage Company, and the driver, Edgar Schaedig, were permitted to intervene as plaintiffs to assert certain other claims against Tuttle which are not involved in this appeal. The Schoolcraft Circuit Court, William F. Hood, J., granted summary judgment for the defendant on the ground that the no-fault insurance act abolished any tort liability arising out of the accident. The Court of Appeals, Allen, P.J., and Beasley, J. (Bashara, J., dissenting), affirmed, deciding that the statutory abolition of tort liability applies where a motor vehicle is involved in any way (Docket No. 78-4737). The plaintiffs appeal. *Held:*

The tort liability abolished by the no-fault act is only such liability as arises out of the tortfeasor's ownership, maintenance, or use of a motor vehicle, not liability which arises out of other conduct, such as the negligent keeping of cattle.

1. The no-fault insurance act was not intended to work a comprehensive abolition of all tort liability incident to a motor vehicle accident. Injuries to persons or property arising from a motor vehicle collision do not give rise to tort liability unless the injury is caused by a wrongful act of commission or omission. Absent a wrongful act, the collision is simply an accident for the consequences of which no one is liable in tort. Tort

REFERENCES FOR POINTS IN HEADNOTES

[1-11] 7 Am Jur 2d, Automobile Insurance §§ 25, 348, 249, 366.

Validity and construction of "no-fault" automobile insurance plans. 42 ALR3d 229.

liability thus arises, in the normal sense of those words, from some wrongful act of the liable party.

2. In this case, the wrongful act asserted is Tuttle's improper keeping of his cow. Such a wrongful act does not relate to the ownership, maintenance or use of a motor vehicle. Tuttle would have been subject to tort liability for his wrongful keeping of a cow whether she collided with a motor vehicle, trampled a rose garden, or walked through a plate glass window. His tort liability here did not "arise from" the ownership, maintenance or use of a motor vehicle any more than it would have "arisen from" the ownership, maintenance or use of a rose garden or a plate glass window; it arose solely from the wrongful keeping of a cow.

3. The no-fault act is a system of compensating injuries and damages incurred in accidents *caused by* motor vehicles. Compensation is due without regard to fault, and the tort system for adjudicating fault was partially abolished. In the context of the no-fault act, therefore, the abolition of tort liability carries the implicit sense of tort liability for injuries or damage *caused by* the ownership, maintenance or use of a motor vehicle.

4. This construction of the statute based on the language used and the no-fault concept is in accord with the meaning intended to be conveyed by identical language in the model act used as a source in the drafting of the no-fault act. It is probable that the Legislature, in using the language of the model act, intended the meaning ascribed to that language by the drafters of the model act, particularly where that meaning is the most natural sense of the language used.

5. The policy apparently expressed by the no-fault act in conditioning the abolition of tort liability upon the obtaining of no-fault coverage is that a person is to be relieved of tort liability only upon participating, through the payment of premiums, in a system for spreading the costs of compensating injuries caused by vehicles without regard to fault. To extend the abolition of tort liability to non-motorist tortfeasors would be to give a broader effect to the abolition of tort liability than would be given the requirement that no-fault insurance be in effect, and thus in part to defeat that policy. The non-motorist tortfeasor is the equivalent of the uninsured motorist and should be treated similarly. Both are outside the basic no-fault system of allocating the costs of accidents and both remain subject to tort liability.

6. A contrary construction is unreasonable. The statute, in subsection 1, provides for retention of tort liability for noneconomic loss above a certain threshold caused by ownership,

maintenance or use of a motor vehicle. By its terms, it addresses only tort liability of the *motorist* defendant for noneconomic loss. If the general abolition of tort liability in subsection 2 is construed, as the Court has concluded it should be, as abolishing only the motorist's tort liability, then the two subsections work together to abolish the tort liability of a motorist generally but to limit that abolition with respect to noneconomic loss to below-threshold loss. But if subsection 2 is construed to abolish the tort liability of the non-motorist as well as the motorist defendant, then the non-motorist alone will be immune from liability for above-threshold noneconomic loss. Such a construction would be contrary to the apparent intention of subsection 1 to have no effect on tort liability for above-threshold noneconomic loss, and would also require finding that the Legislature intended to distinguish between motorist and non-motorist tortfeasors and retain only the motorist's liability for noneconomic loss. There is nothing in the no-fault act or its policy or in the model acts to support such a distinction or intention.

7. Derogation of both statutory and common-law rights to recover noneconomic loss should not be inferred from ambiguous language of the statute where a reasonable construction would retain the rights, and the statute also expresses a policy to retain such rights where the injury is severe. Moreover, if the tort liability abolished were construed to include all tort liability for injuries or damage incurred in accidents involving vehicles with respect to which no-fault coverage is in effect, then the tort liability of an uninsured motorist would be abolished whenever he is involved in an accident with an insured motorist, which would be contrary to the clear intent of the act.

8. It could be argued that the no-fault act should be read so that the scope of the tort liability retained is coextensive with an insurer's right of subtraction or reimbursement from recovery on a tort claim. At the time the no-fault statute was enacted, however, it provided the insurer with a right of subtraction for or reimbursement from *any* tort recovery to the extent it duplicated personal protection insurance benefits, without specification of the types of tort recoveries to which the right applied. The 1978 amendment specifying the types of tort recovery for which subtraction or reimbursement is permitted was intended to clarify the limitations upon the insurer's right of subtraction for and reimbursement out of a third-party tort recovery, and was enacted at a time when litigation involving that issue was pending in the Supreme Court. There is no

indication of an intent to alter the scope of the abolition of tort liability, and none may be inferred.

Justice Levin also wrote separately to say that the possibility of duplication of personal protection insurance benefits by a tort recovery from a non-motorist tortfeasor is a further indication of the desirability of a comprehensive legislative review of the no-fault act. It may also be appropriate to consider whether the enactment of the no-fault act should alter the common-law collateral source rule normally applicable to tort actions to reduce a plaintiff's tort recovery to the extent it duplicates personal protection benefits paid or payable under mandatory no-fault insurance coverage.

Reversed and remanded for trial.

96 Mich App 763; 294 NW2d 224 (1980) reversed.

1. AUTOMOBILES — TORTS — NO-FAULT INSURANCE — ACTIONS.
  The tort liability abolished by the no-fault insurance act is only such liability as arises out of the defendant's ownership, maintenance or use of a motor vehicle, not liability which arises out of other conduct (MCL 500.3135; MSA 24.13135).

2. AUTOMOBILES — TORTS — NO-FAULT INSURANCE — ACTIONS.
  The no-fault insurance act was not intended to work a comprehensive abolition of all tort liability incident to a motor vehicle accident (MCL 500.3101 *et seq.;* MSA 24.13101 *et seq.).*

3. AUTOMOBILES — TORTS — ACTIONS.
  Injuries to persons or property arising from a motor vehicle collision do not give rise to tort liability unless the injury is caused by a wrongful act of commission or omission; absent a wrongful act, the collision is simply an accident for the consequences of which no one is liable in tort.

4. AUTOMOBILES — TORTS — ANIMALS — NO-FAULT INSURANCE — ACTIONS.
  An action in tort for damages to a truck resulting from a collision with the defendant's cow is not one arising from the ownership, maintenance or use of an automobile within the meaning of the provision of the no-fault insurance act abolishing liability for such torts where the wrongful act asserted is the improper keeping of the cow in violation of the statute prohibiting allowing an animal to run at large (MCL 433.11 *et seq.,* 500.3135; MSA 18.789[1] *et seq.,* 24.13135).

5. AUTOMOBILES — TORTS — NO-FAULT INSURANCE.
  The no-fault insurance act is a system of compensating injuries

and damages incurred in accidents caused by motor vehicles in which compensation is due without regard to fault, and it partially abolished the tort system for adjudicating fault; in that context, the abolition of tort liability carries the implicit sense of tort liability for injuries or damage *caused by* the ownership, maintenance or use of a motor vehicle (MCL 500.3135; MSA 24.13135).

6. AUTOMOBILES — NO-FAULT INSURANCE — TORTS — STATUTES.

It is probable that the Legislature, in using the language of the model Uniform Motor Vehicle Accident Reparations Act to abolish tort liability partially for motor vehicle accidents, intended the meaning ascribed to that language by the drafters of the model act, particularly where that meaning is the most natural sense of the language used (MCL 500.3135; MSA 24.13135).

7. AUTOMOBILES — NO-FAULT INSURANCE — TORTS — PUBLIC POLICY.

The policy apparently expressed by the no-fault insurance act in conditioning the abolition of tort liability upon the obtaining of no-fault coverage is that a person is to be relieved of tort liability only upon participating, through the payment of premiums, in a system for spreading the costs of compensating injuries caused by vehicles without regard to fault (MCL 500.3135; MSA 24.13135).

8. AUTOMOBILES — NO-FAULT INSURANCE — TORTS — ACTIONS — NONECONOMIC LOSS.

The no-fault insurance act provides in one subsection for retention of tort liability for noneconomic loss above a certain threshold caused by ownership, maintenance or use of a motor vehicle, and the general abolition of tort liability in another subsection abolishes only tort liability of the motorist defendant; so construed, the two subsections work together to abolish the tort liability of a motorist generally but to limit that abolition with respect to noneconomic loss to below-threshold loss (MCL 500.3135; MSA 24.13135).

9. AUTOMOBILES — NO-FAULT INSURANCE — NONECONOMIC LOSS — STATUTES — CONSTRUCTION.

Derogation of both statutory and common-law rights to recover noneconomic loss should not be inferred from ambiguous language of the no-fault insurance act where a reasonable construction would retain the rights, and the statute also expresses

a policy to retain such rights where the injury is severe (MCL 500.3135; MSA 24.13135).

10. AUTOMOBILES — NO-FAULT INSURANCE — TORTS — ACTIONS.

It would be contrary to the clear intent of the no-fault insurance act to retain the tort liability of the uninsured motorist if the tort liability abolished by the statute were construed to include all tort liability for injuries or damage incurred in accidents involving vehicles with respect to which no-fault coverage is in effect (MCL 500.3135; MSA 24.13135).

11. AUTOMOBILES — NO-FAULT INSURANCE — TORTS — STATUTES — CONSTRUCTION — AMENDMENT.

The amendment of the no-fault insurance act specifying the types of tort recovery for which the insurer is permitted subtraction or reimbursement was intended to clarify the limitations on the insurer's right of subtraction and reimbursement, and was enacted at a time when litigation involving that issue was pending in the Supreme Court; there is no indication of an intent to alter the scope of the abolition of tort liability, and none may be inferred (1978 PA 461).

*Davis & Olsen Law Office* for plaintiffs.

*Nebel & Revord Law Office* for defendant.

Amicus Curiae:

*Lopatin, Miller, Freedman, Bluestone, Erlich & Rosen* (by *Steven G. Silverman)* for Michigan Trial Lawyers Association.

LEVIN, J. The question presented is whether the provision of the no-fault act which abolishes certain tort liability relieves a non-motorist tortfeasor of liability for losses arising from a motor vehicle accident caused by his lack of care. We hold that it does not.

Edgar Schaedig was driving a truck owned by Zaiger Beverage Company when he collided with defendant Donald Tuttle's cow, which was running

loose on the highway. The truck jackknifed and ran into a ditch.[1]

Citizens Insurance Company of America, the insurer of the truck, paid Zaiger Beverage for the cost of repairing extensive damage to the truck and became subrogated to its claims against Tuttle. Citizens Insurance filed this action against Tuttle to recover the amounts paid, on the ground that Tuttle was at fault in failing to keep the cow properly fenced in. This appeal involves only the question of Tuttle's liability for the damage to the truck.[2]

The trial court granted Tuttle's motion for summary judgment, on the ground that any tort liability arising out of the accident had been abolished by the no-fault motor vehicle liability act.[3] The Court of Appeals, one judge dissenting, affirmed. We reverse and remand for trial. The tort liability abolished by the no-fault act is only such liability as arises out of the defendant's ownership, maintenance or use of a motor vehicle, not liability which arises out of other conduct, such as the negligent keeping of cattle.

## I

Section 3135, which provides for the abolition of tort liability, states:

---

[1] Zaiger Beverage Company was allowed to join the action to assert its claims against Tuttle for the extra expense of hiring another truck while its truck was being repaired, and for the increase in its insurance premiums. Schaedig was allowed to join to assert his claim against Tuttle for the temporary loss of his employment caused by the truck being disabled. There is no claim of physical injury to Schaedig.

[2] It was alleged that Tuttle's cow being at large was contrary to MCL 433.11 *et seq.;* MSA 18.789(1) *et seq.,* and, in a second count, that Tuttle was negligent in not keeping the cow properly fenced in.

[3] MCL 500.3101 *et seq.;* MSA 24.13101 *et seq.*

"(1) A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement.

"(2) Notwithstanding any other provision of law, tort liability arising from the ownership, maintenance, or use within this state of a motor vehicle with respect to which the security required by section 3101(3) and (4) was in effect is abolished except as to:

"(a) Intentionally caused harm to persons or property. Even though a person knows that harm to persons or property is substantially certain to be caused by his or her act or omission, the person does not cause or suffer such harm intentionally if he or she acts or refrains from acting for the purpose of averting injury to any person, including himself or herself, or for the purpose of averting damage to tangible property.

"(b) Damages for noneconomic loss as provided and limited in subsection (1).

"(c) Damages for allowable expenses, work loss, and survivor's loss as defined in sections 3107 to 3110 in excess of the daily, monthly, and 3-year limitations contained in those sections. The party liable for damages is entitled to an exemption reducing his or her liability by the amount of taxes that would have been payable on account of income the injured person would have received if he or she had not been injured." MCL 500.3135; MSA 24.13135.[4]

The Court of Appeals noted that, in contrast to

---

[4] The accident in the instant case occurred on April 5, 1977. Effective July 1, 1980, a fourth exception was added to subsection (2):

"(d) Damages up to $400.00 to motor vehicles, to the extent that the damages are not covered by insurance. An action for damages pursuant to this subdivision shall be conducted in compliance with subsection (3).

"(3) In an action for damages pursuant to subsection (2)(d):

"(a) Damages shall be assessed on the basis of comparative fault, except that damages shall not be assessed in favor of a party who is more than 50% at fault.

"(b) Liability shall not be a component of residual liability, as prescribed in section 3131, for which maintenance of security is required by this act.

"(4) Actions under subsection (2)(d) shall be commenced, whenever

subsection (1) of § 3135, subsection (2) fails to specify whether only tort liability arising out of a *defendant's* ownership, maintenance or use of a motor vehicle was abolished or whether the tort liability which was abolished includes liability arising out of an accident involving only a *plaintiff's* ownership, maintenance or use of a motor vehicle and caused by tortious conduct of a non-motorist defendant. The Court concluded, in light of the act's purpose to eliminate fault determinations, that "aside from the enumerated exceptions, tort liability is to be precluded whenever an automobile is involved in any way".

We conclude, however, that the no-fault act was not intended to work a comprehensive abolition of all tort liability incident to a motor vehicle accident.

Subsection (2) abolishes "tort liability arising from the ownership, maintenance, or use within this state of a motor vehicle". Injuries to persons or property arising from a motor vehicle collision do not give rise to tort liability unless the injury is caused by a wrongful act of commission or omission. Absent a wrongful act, the collision is simply an accident for the consequences of which no one is liable in tort. Tort liability thus arises, in the normal sense of those words, from some wrongful act of the liable party.

---

legally possible, in the small claims division of the district court or the conciliation division of the common pleas court of the city of Detroit or the municipal court. If the defendant or plaintiff removes such an action to a higher court and does not prevail, the judge may assess costs.

"(5) A decision of a court made pursuant to subsection (2)(d), shall not be res judicata in any proceeding to determine any other liability arising from the same circumstances as gave rise to the action brought pursuant to subsection (2)(d).

"(6) Subsections (2)(d), (3), (4), and (5) shall take effect July 1, 1980." 1979 PA 147; MCL 500.3135; MSA 24.13135.

In the instant case, the wrongful act asserted is Tuttle's improper keeping of his cow. Such a wrongful act does not relate to the ownership, maintenance or use of a motor vehicle. Tuttle's tort liability, if any, arose only from his alleged wrongful keeping of the cow, not from the ownership, maintenance or use of a motor vehicle.

Tuttle would have been subject to tort liability for his wrongful keeping of a cow whether it collided with a motor vehicle, trampled a rose garden, or walked through a plate glass window. His tort liability in the instant case no more "arose from" the ownership, maintenance or use of a motor vehicle than it would have "arisen from" the ownership, maintenance or use of a rose garden or a plate glass window. It arose solely from the wrongful keeping of a cow.

The no-fault act is a system of compensating injuries and damages incurred in accidents *caused by* motor vehicles. Compensation is due without regard to fault, and the tort system for adjudicating fault was partially abolished. In the context of the no-fault act, therefore, the abolition of "tort liability arising from the ownership, maintenance, or use * * * of a motor vehicle" carries the implicit sense of tort liability for injuries or damage *caused by* the ownership, maintenance or use of a motor vehicle.

Only persons who own, maintain or use motor vehicles can be subject to tort liability for injuries or damage caused by the ownership, maintenance or use of a motor vehicle. The non-motorist tort-feasor cannot be subject to tort liability for injuries or damage caused by the ownership, maintenance or use of a motor vehicle. The abolition of tort liability for injuries or damage caused by (arising from) the ownership, maintenance or use

of a motor vehicle, therefore, does not abolish the tort liability of the non-motorist tortfeasor.

The foregoing construction of subsection (2), based on the language used and the no-fault concept, is in accord with the meaning which the drafters of the Uniform Motor Vehicle Accident Reparations Act ("UMVARA"), one of the model acts utilized as source material in the drafting of the no-fault act, intended to convey by the use of identical language in the model act. Section 5(a) of UMVARA provides, with exceptions not at issue here, that "[t]ort liability with respect to accidents occurring in this state and arising from the ownership, maintenance, or use of a motor vehicle is abolished". 14 ULA, Civil Procedural and Remedial Laws, p 63. The comment to § 5 states:

"[T]he only tort actions which are abolished are those which arise from the *defendant's* ownership, maintenance, or use of a motor vehicle. Among the potential tort actions thus retained by an automobile accident victim would be those against an automobile manufacturer for products liability or against a railroad in the case of an automobile-train collision." *Id.,* p 65 (emphasis supplied).

It is probable that the Legislature, in using the language of the model act, intended the meaning ascribed to that language by the drafters of the model act, particularly where that meaning is the most natural sense of the language used.

Moreover, subsection (2) abolishes tort liability arising from the ownership, maintenance or use only of vehicles for which the required no-fault insurance or other security has been obtained. The policy apparently expressed in so conditioning the abolition of tort liability upon the obtaining of no-fault coverage is that a person is to be relieved of

tort liability only upon participating, through the payment of premiums, in a system for spreading the costs of compensating vehicular injuries without regard to fault.[5] To extend the abolition of tort liability to non-motorist tortfeasors would be to incorporate into the no-fault system the costs of providing personal protection insurance benefits to motorists, passengers and pedestrians injured by non-motorist tortfeasors without incorporating offsetting premiums from non-motorist tortfeasors, since non-motorist tortfeasors are not required to purchase no-fault insurance with respect to their conduct as non-motorists.

Such extension would give a broader effect to § 3135's abolition of tort liability than would be given its requirement that no-fault insurance be in effect. To the extent that the abolition of tort liability is broader than the requirement of no-fault coverage, the policy of limiting tort immunity to those who have participated in the spreading of the costs of motor vehicle accident compensation would be defeated. The non-motorist tortfeasor is the equivalent of the uninsured motorist and should be treated similarly. Both are outside the basic no-fault system of allocating the costs of accidents and both remain subject to tort liability.[6]

---

[5] This policy is expressed in the draftsmen's comments to § 5(a)(1) of UMVARA, which excepts the uninsured motorist from the tort immunity provided in § 5:

"The rationale for denying the tort exemption to persons failing to comply with the requirement of providing security (Section 7) is that such persons have not contributed to the basic reparation benefits which are intended to replace much of existing tort liability."

[6] It should be noted that this construction of subsection (2)—as retaining the tort liability of non-motorist tortfeasors (tort liability not arising from the defendant's ownership, maintenance or use of a motor vehicle)—does not affect the obligation of a no-fault insurer to pay benefits to an injured non-motorist whose fault causes a collision. Although Tuttle is subject to liability in tort for damage he caused by improperly allowing his cow to be at large, that does not affect his right to recover no-fault benefits for damage to his cow.

Section 3121 of the act requires payment of benefits for "accidental

II

This construction of the abolition of tort liability intended by subsection (2), in addition to appearing directly from the language and antecedents of the section, also appears indirectly from the unreasonableness of a contrary construction.

To construe subsection (2) as abolishing tort liability arising from either a plaintiff's or a defendant's ownership, maintenance or use of a motor vehicle would create a serious conflict with the policy expressed in subsection (1). Subsection (1) provides:

"A person remains subject to tort liability for noneconomic loss *caused by his or her* ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1); MSA 24.13135(1) (emphasis supplied).

Subsection (1) is an exception to the general abolition of tort liability provided in subsection (2). The apparent intent of subsection (1) is to abolish tort liability for noneconomic loss resulting from below-threshold injuries—injuries not causing death, serious impairment of a body function, or

damage to tangible property *arising out of* the ownership, operation, maintenance or use of a motor vehicle", and provides that these benefits are due "without regard to fault". Similarly, § 3105 requires payment of benefits for "accidental *bodily injury arising out of* the ownership, operation, maintenance or use of a motor vehicle", and provides that these benefits are due "without regard to fault".

The operative effect of the expression "tort liability arising from" is inherently related to the party whose wrongful conduct gave rise to the liability. The operative effect of the expressions "[property] damage * * * arising out of" and "bodily injury arising out of", unlike the expression "tort liability arising from", is not implicitly related to the conduct of a particular party, and thus the "damage" and "injury" provisions apply without regard to whether the party claiming recovery negligently caused the damage or injury.

permanent serious disfigurement—and to not affect tort liability for noneconomic loss resulting from above-threshold injuries.[7]

By its terms, however, subsection (1) addresses only the tort liability of the motorist defendant for noneconomic loss—tort liability for noneconomic loss caused by the *defendant's* ownership, maintenance or use of a motor vehicle. If subsection (2) is construed, as we have concluded it should be, as abolishing only tort liability arising from the defendant's ownership, maintenance or use of a motor vehicle, then the two subsections work together. Subsection (2) abolishes the tort liability of a motorist generally, and subsection (1) limits that abolition in respect to noneconomic loss to below-threshold noneconomic loss.

If subsection (2) is given the non-parallel construction of abolishing the tort liability of the non-motorist as well as the motorist defendant, then subsection (2) will have a broader effect than subsection (1). The non-motorist alone will be immune from tort liability for above-threshold noneconomic loss.

Such a construction would be contrary to the apparent intent of subsection (1) to have no effect on tort liability for above-threshold noneconomic loss. It would also require finding that the Legisla-

_____
[7] It appears to be the policy of the act to preserve a plaintiff's recovery for above-threshold noneconomic loss:

"The legislative intent, inferable from the face of [§ 3135], is clear: the Legislature intended to allow the catastrophically injured victim and the victim of extraordinary economic losses compensation in addition to that provided by §§ 3107 to 3110 of the act." *Workman v Detroit Automobile Inter-Ins Exchange,* 404 Mich 477, 508-509; 274 NW2d 373 (1979).

See MCL 500.3116(4); MSA 24.13116(4):

"A subtraction or reimbursement shall not be due the claimant's insurer from that portion of any recovery to the extent that recovery is realized for noneconomic loss as provided in section 3135(1) and (2)(b) * * * and survivor's loss as defined in sections 3107 to 3110 * * *."

ture intended by subsection (1) to distinguish between motorist and non-motorist tortfeasors in relation to their respective tort liability for above-threshold noneconomic loss and that the Legislature intended to retain only the motorist defendant's tort liability for noneconomic loss. We are unable to find anything in the no-fault act, its policy or the model acts to support such a distinction or intention.

To give such a non-parallel construction to subsection (2) would be to find that the Legislature, by the indirect means of an at best ambiguous provision and in apparent conflict with its intent to have no effect upon a plaintiff's right to recover for severe noneconomic loss, nonetheless intended to abolish the right to recover all noneconomic loss resulting from injuries in motor vehicle accidents caused, for example, by negligent, reckless or even intentional defects in the manufacture of a motor vehicle, or by the negligent, reckless or even intentional failure of a mechanic to properly repair a motor vehicle, or by the "unlawful selling, giving or furnishing to any [visibly intoxicated person] any intoxicating liquor". MCL 436.22; MSA 18.993.

Such derogation of both statutory and common-law rights to recover noneconomic loss should not be inferred from the ambiguous language of subsection (2), especially since an at least as reasonable and apparently more reasonable construction would retain the rights, since a model act on which the no-fault act was based used identical language with the intent of retaining the rights, and since the subsection immediately preceding subsection (2) expresses a policy to retain such rights where the injury is severe.

Moreover, if the tort liability abolished by subsection (2) were construed to include all tort liabil-

ity for injuries or damage incurred in accidents involving vehicles with respect to which no-fault coverage is in effect, then the tort liability of an uninsured motorist would be abolished whenever he is involved in an accident with an insured motorist. Such a result would be contrary to the clear intent of the act to retain the tort liability of the uninsured motorist.[8] In order to preserve the policy of retaining the tort liability of the uninsured motorist, it would be necessary to engraft a singular exception on subsection (2).

We conclude that subsection (2) was intended to abolish only tort liability arising from a defendant's ownership, maintenance or use of a motor vehicle. Tuttle thus remains subject to tort liability arising from his alleged lack of care in the keeping of his cow. We express no opinion regarding the ultimate resolution at trial of the factual allegations.

## III

Several sections of the no-fault act are intended to reduce the cost of insurance by eliminating duplicative recoveries for losses incurred in motor vehicle accidents.[9]

Section 3116 provides the no-fault insurer a

---

[8] See *Bradley v Mid-Century Ins Co,* 409 Mich 1, 62; 294 NW2d 141 (1980), and MCL 500.3116(2); MSA 24.13116(2) which, in providing for the reimbursement of no-fault benefits duplicated by a tort recovery from an uninsured motorist, necessarily implies that the right to so recover in tort is retained.

[9] See, *e.g.,* MCL 500.3109; MSA 24.13109 (no-fault benefits are reduced to the extent governmental benefits are provided for the same injury); MCL 500.3109a; MSA 24.13109(1) (insurers are required to offer no-fault coverage coordinated with other coverage of the insured); and MCL 500.3116; MSA 24.13116 (no-fault insurers are provided a right of reimbursement out of certain tort recoveries of an insured to the extent the recovery duplicates required no-fault benefits).

right of subtraction from or reimbursement for personal protection insurance benefits to the extent an insured's tort recovery duplicates those benefits:

"A subtraction from or reimbursement for personal protection insurance benefits paid or payable under this chapter shall be made only if recovery is realized upon a tort claim arising from an accident occurring outside this state, a tort claim brought within this state against the owner or operator of a motor vehicle with respect to which the security required by section 3101(3) and (4) was not in effect, or a tort claim brought within this state based on intentionally caused harm to persons or property, and shall be made only to the extent that the recovery realized by the claimant is for damages for which the claimant has received or would otherwise be entitled to receive personal protection insurance benefits."

The no-fault insurer's right to subtraction or reimbursement is limited by § 3116(2) to recoveries from *motorist* tortfeasors or for intentional torts. There is no right to subtraction or reimbursement with respect to a tort recovery from a non-motorist defendant which duplicates personal protection insurance benefits.

It could be argued that the specification of tort recoveries with respect to which subtraction or reimbursement is provided should be read as expressing the legislative view of what tort recoveries were retained under the act, and that the Legislature intended by § 3116(2) to provide a right of subtraction for or reimbursement from any tort recovery still permitted under the act. It would follow that § 3135 should be read so that the scope of the tort liability retained is coextensive with an insurer's right of subtraction or reimbursement under § 3116(2).

At the time § 3135 was enacted, however, § 3116 provided the insurer with a right of subtraction for or reimbursement from *any* tort recovery to the extent it duplicated personal protection insurance benefits, without specification of the types of tort recoveries to which the right applied.[10] Thus, at the time § 3135 was originally enacted, the reimbursement provision of the no-fault act carried no implication of a limitation upon the tort recoveries retained by § 3135.

The amendment to § 3116 specifying the types of tort recovery for which subtraction or reimbursement was permitted should not be read as amending by implication the original meaning of § 3135 unless a clear intent to do so can be ascertained. The 1978 amendment to § 3116 was intended to clarify the limitations upon the insurer's right of subtraction for and reimbursement out of a third-

---

[10] Section 3116(2) was added by amendment in 1978. 1978 PA 461. Prior to its amendment, the pertinent subsection of § 3116 read:

"(1) A subtraction from personal protection insurance benefits shall not be made because of the value of a claim in tort based on the same accidental bodily injury. However, after recovery is realized upon a tort claim, a subtraction shall be made to the extent of the recovery, exclusive of reasonable attorneys' fees and other reasonable expenses incurred in effecting the recovery. If personal protection insurance benefits have already been received, the claimant shall repay to the insurers out of the recovery a sum equal to the benefits received, but not more than the recovery exclusive of reasonable attorneys' fees and other reasonable expenses incurred in effecting the recovery. The insurer shall have a lien on the recovery to this extent. A recovery by an injured person or his estate for loss suffered by him shall not be subtracted in calculating benefits due a dependent after the death and a recovery by a dependent for loss suffered by the dependent after the death shall not be subtracted in calculating benefits due the injured person."

See *Workman v Detroit Automobile Inter-Ins Exchange, supra,* p 510:

"[W]e construe § 3116 to mean that an insurance carrier paying personal injury protection benefits is entitled to reimbursement from the tort recovery of a person injured as a result of a motor vehicle accident only if, and to the extent that, the tort recovery includes damages for losses for which personal injury protection benefits were paid."

party tort recovery, and was enacted at a time when litigation involving that issue was pending in this Court.[11] There is no indication of an intent to alter the scope of § 3135's abolition of tort liability, and none may be inferred.

The judgment of the Court of Appeals is reversed and the cause remanded for trial. No costs, a public question.

COLEMAN, C.J., and KAVANAGH, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred with LEVIN, J.

WILLIAMS, J. I concur because of part I.

LEVIN, J. *(concurring).* The possibility of duplication of personal protection insurance benefits by a tort recovery from a non-motorist tortfeasor is a further indication of the desirability of a comprehensive legislative review of the no-fault act as we approach its first decade of operation.

It may also be appropriate to consider whether the enactment of the no-fault act, with its policy of eliminating duplicative recoveries, should alter the common-law collateral source rule normally applicable to tort actions to reduce a plaintiff's tort recovery to the extent it duplicates personal protection benefits paid or payable under mandatory no-fault insurance coverage.

WILLIAMS, J., concurred with LEVIN, J.

[11] *Workman v Detroit Automobile Inter-Ins Exchange, supra,* pp 521-523 (LEVIN, J., concurring).