Emma GALLOWAY, Personal Representative of the Estate of Eddie L. Galloway, Plaintiff,

v.

NORTHWEST AIRLINES, INC., and McDonnell Douglas Corporation, Inc., Defendants.

Civ. No. 88–CV–71347–DT.

United States District Court, E.D. Michigan, S.D.

Oct. 12, 1989.

Charles Brewer, Phoenix, Ariz., Stanley Chesley, Cincinnati, Ohio, Lee Kreindler, New York City, Gerald Lear and Thomas Meehan, Washington, D.C., and Richard Schaden, Birmingham, Mich., for plaintiffs' Steering Committee.

Carroll E. Dubuc, Laxalt, Washington, Perito and Dubuc, Washington, D.C., for defendant Northwest Airlines.

John J. Hennelly, Bryan, Cave, McPheeters & McRoberts, Los Angeles, Cal., and Donald E. Shely, Dykema Gossett, Detroit, Mich., for defendant McDonnell Douglas.

## ORDER

JULIAN ABELE COOK, Jr., Chief Judge.

On July 17, 1989, the Defendant, Northwest Airlines, Inc. (Northwest), filed a motion to dismiss, contending that the subrogation claims of the Plaintiff–Intervenor State Farm Mutual Insurance Company (State Farm),[1] in which it attempts to obtain reimbursement and indemnification of benefits paid on behalf of its insureds Eddie Galloway and Sharon Schweitzer, are precluded by the terms of the Michigan Motor Vehicle No–Fault Act (No–Fault Act).

In its response on August 2, 1989,[2] State Farm does not contest that the No–Fault Act bars its claims for the personal injury

---

1. Northwest's Motion to Dismiss pertained to State Farm's claims for subrogation in the following two cases: *Galloway v. Northwest Airlines, Inc.*, 88–CV–71347–DT; *Schweitzer v. Northwest Airlines, Inc.*, 88–CV–72737–DT.

2. On August 7, 1989, State Farm filed a second responsive pleading that was identical in all respects to its first responsive pleading.

benefits which were paid to its insureds. However, State Farm takes the position that the No–Fault Act does not preclude its reimbursement claims for collision benefits which were paid for the destruction of a motor vehicle.

For the following reasons, Northwest's motion to dismiss State Farms' subrogation claims under the Michigan No–Fault Act is granted in part and denied in part.

## I

The facts are not in dispute. On August 16, 1987, the Northwest Flight 255 accident aircraft crashed and struck two vehicles that had been travelling northbound on Middlebelt Road near the Detroit Metropolitan Airport. One of the vehicles was operated by Eddie Galloway. The second vehicle was operated by Sharon Schweitzer. As a result of the collision between the two vehicles and the aircraft, Galloway and Schweitzer died and their respective vehicles were destroyed. State Farm represents that it made payments to the decedents' estates pursuant to the terms of its contract of insurance as follows:

1. Payments to Galloway: "[T]hat pursuant to the terms of the automobile insurance policy, State Farm paid $16,-797.40 as a result of the damage sustained to the 1987 GMC Jimmy vehicle, $ 745.00 funeral expenses, and it has paid, or is obligated to pay in the future, survivor's benefits totalling $ 31,140.00." Galloway Complaint.

2. Payments to Schweitzer: "[T]hat pursuant to the terms of the automobile insurance policy, State Farm paid $8,168.00 as a result of the damage sustained to the 1986 Ford Mustang vehicle, $1,000.00 for funeral expenses, and it has paid, or is obligated to pay in the future, death benefits totalling $10,000.00." Schweitzer Complaint.

On December 20, 1989, State Farm was permitted to intervene and initiate legal proceedings against Northwest in an attempt to recover the benefits that were paid to or on behalf of the insureds, Galloway and Schweitzer.

## II

■ The parties agree that the substantive law of Michigan applies to the instant dispute. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Pursuant to the Michigan No–Fault Act, nonmotorist tortfeasors, such as Northwest, are not entitled to invoke the tort immunity provisions of M.C.L.A. § 500.3135(2) (West 1983). *See Citizens Insurance Co. v. Tuttle*, 411 Mich. 536, 309 N.W.2d 174 (1981); *Ryan v. Ford Motor Co.*, 141 Mich.App. 762, 368 N.W.2d 266 (1985). However, the Michigan No–Fault Act expressly creates limitations on the insurer's right of subrogation or indemnity against a third-party tortfeasor who is not otherwise immune from suit:

> (2) A subtraction from or reimbursement for personal protection insurance benefits paid or payable under this chapter shall be made only if recovery is realized upon a tort claim arising from an accident occurring outside this state, a tort claim brought within this state against the owner or operator of a motor vehicle with respect to which the security required by section 3103(3) and (4) was not in effect, or a tort claim brought within this state based on intentionally caused harm to persons or property, and shall be made only to the extent that the recovery realized by the claimant has received or would otherwise be entitled to receive personal protection insurance benefits.

M.C.L.A. § 500.3116(2) (West 1983).

The Sixth Circuit Court of Appeals noted in *Automobile Club Insurance Ass'n v. LaPointe*, 843 F.2d 964, 966 (6th Cir.1988) (citations omitted) (emphasis in original):

> In construing th[is] statutory provision[ ], the Michigan courts have concluded that a no-fault insurer is entitled to reimbursement only when the third party tort claim arose from an out-of-state accident, an uninsured *motor vehicle* driver, or an intentional act.

■ In its opposition papers, State Farm does not challenge Northwest's argument that those claims for subrogation which are based on the personal injury benefits paid to its insureds are unauthorized under

§ 500.3116(2).[3] However, it contends that the term "personal protection insurance benefits" within § 500.3116(2) bars "only those personal injury protection benefits payable under the no-fault act, and does not apply to reimbursement for any other type of benefits paid by a no-fault carrier to its insured." Specifically, State Farm maintains that the limitation section does not "govern reimbursement of collision benefits, which are paid pursuant to the insurance contract and not the no-fault act." State Farm Response Brief at 7 (Aug. 21, 1989).

A review of the statutory definition of "personal injury protection benefits" supports State Farm's contention that it does not relate to payments made to reimburse an insured for motor vehicle damage:

Sec. 3105. (1) Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, ...

. . . .

(3) Bodily injury includes death resulting therefrom and damage to or loss of a person's prosthetic devices in connection with the injury.

M.C.L.A. § 500.3105(1), (3) (West 1983).

Sec. 3107. Personal protection insurance benefits are payable to the following:

(a) Allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services, and accomodations for an injured person's care, recovery or rehabilitation. Allowable expenses within personal protection insurance coverage shall not include charges for a hospital room in excess of a reasonable and customary charge for semiprivate accomodations except when the injured person requires special or intensive care, or charges for funeral and burial expenses in excess of $1,000.00.

(b) Work loss consisting of loss of income from work or injured person would have performed during the first 3 years after the date of the accident if he had not been injured and expenses not exceeding $20,000.00 per day, reasonably incurred in obtaining ordinary and necessary services in lieu of those that, if he had not been injured, an injured person would have performed during the first 3 years after the accident, not for income but for the benefit of himself or of his dependent. . . .

M.C.L.A. § 500.3107(a)–(b) (West 1983).

Accordingly, this Court agrees with State Farm that personal protection insurance coverage, as defined by the No–Fault Act, does not include the damage that may have been sustained to the insured's motor vehicle. Therefore, the terms of section 500.3116(2), which expressly limits the circumstances under which an insurer may seek reimbursement for personal protection insurance benefits, does not pertain to those claims that were paid pursuant to collision insurance which covered the loss of a motor vehicle.

■ However, the No–Fault Act also provides the basis for property protection insurance coverage in automobile insurance policies. This property protection insurance coverage is set forth in section 500.-3121(1), which provides:

Sec. 3121. (1) Under property protection insurance an insurer is liable to pay benefits for accidental damage to tangible property arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle subject to the provisions of this section and sections 3123, 3125, and 3127

---

3. On August 15, 1989, State Farm filed an unauthorized pleading in which it maintained that its claims of subrogation are supported by *Citizens Insurance Co. v. Tuttle*, 411 Mich. 536, 309 N.W.2d 174 (1981). However, *Tuttle* did not address whether the reimbursement sections of the No–Fault Act, sections 500.3116 and 500.-3127, preclude an insurer from holding a nonmotorist tortfeasor ultimately accountable for the cost of repair damages to the insured's motor vehicle. Rather, the *Tuttle* decision merely focused on whether a nonmotorist tortfeasor could invoke the immunity provisions of section 500.3135(2) of the No–Fault Act. In fact, the *Tuttle* court noted that the tort immunity provision, section 500.3135, was unrelated to, and not coextensive with, the reimbursement provision, section 500.3116, of the No–Fault Act.

M.C.L.A. § 500.3121(1) (West 1983). In addition, the No–Fault Act provides that "[t]he provisions for distribution of loss and for reimbursement and indemnification among personal protection insurers as set forth ... in section 3116 also applies to property protection insurers." M.C.L.A. § 500.3127 (West 1983) (footnote omitted). If these provisions were construed to cover claims for damage to motor vehicles, then State Farm's right to reimbursement of collision benefits would be governed, and precluded, by the limitations of section 500.3116(2).

On the other hand, certain types of property are excluded from property protection insurance coverage and are not covered by no-fault insurance. Section 500.3123(1)(a) provides:

> Sec. 3123. (1) Damage to the following kinds of property is excluded from property protection insurance benefits:
>
> (a) Vehicles and their contents, including trailers, operated or designed for operation upon a public highway by power other than muscular power, unless the vehicle is parked in a manner as not to cause unreasonable risk of the damage which occurred.

M.C.L.A. § 500.3123(1)(a) (West 1983). Under the property protection no-fault scheme, property damage to the insured's own motor vehicle is not covered by property protection benefits.[4] *See Heard v. State Farm Ins.*, 414 Mich. 139, 324 N.W.2d 1 (1982): *Shavers v. Attorney General*, 402 Mich. 554, 267 N.W.2d 72 (1978); *Pioneer State Ins. v. Allstate*, 107 Mich.App. 261, 309 N.W.2d 598 (1981); *Burk v. Warren*, 105 Mich.App. 556, 307 N.W.2d 89 (1981) ("no fault policies extend no property coverage to any vehicles involved in nonparking related accidents"). Therefore, the purview of the subrogation limitations within the No–Fault Act does not include a contractual right of subrogation based on the payment of collision benefits that are not covered by no-fault insurance.

Upon a review of the No–Fault Act, it is apparent that sections 500.3116 and 500.3127 refer only to those limited circumstances under which an insurer may obtain reimbursement for the payment of "personal protection insurance benefits" and "property protection insurance benefits" respectively. The payment of collision benefits that compensates the insured for damage to a motor vehicle does not constitute "personal protection insurance benefits" or "property protection insurance benefits." Northwest has failed to cite any statutory provision or common law doctrine that would limit or render unenforceable State Farm's contractual subrogation right to the reimbursement of collision benefits paid to its insured.[5]

### III

On the basis of the foregoing, this Court concludes that the terms of the No–Fault Act preclude State Farm from pursuing subrogation for personal injury protection benefits paid to its subrogors. However, with regard to the claims for subrogation arising from the property damage to the insureds' respective motor vehicles, Northwest has not shown that State Farm has failed to state a claim upon which relief can be granted. Therefore, Northwest's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted in part and denied in part.

IT IS SO ORDERED.

---

**4.** With respect to damage sustained to a moving vehicle, the insured may elect to purchase collision insurance or take the risk of absorbing such damages. Michigan law requires, however, that insurers offer optional collision insurance that will cover any damage to a motor vehicle. *See* M.C.L.A. § 500.3037.

**5.** This Court notes that under the No–Fault Act, a motorist who can properly invoke the tort immunity provision, *see* M.C.L.A. § 500.3135(2), and his no-fault insurer, are subject to limited "[d]amages up to $ 400.00 to motor vehicles, to the extent that the damages are not covered by insurance." M.C.L.A. § 500.3135(2)(d)(West 1983). *See Heard v. State Farm Insurance*, 414 Mich. 139, 324 N.W.2d 1 (1982). Northwest may not take advantage of this limitation on recovery for damage to motor vehicle since it is not immune from tort under section 500.3135(2).