THORNTON v ALLSTATE INSURANCE COMPANY

Docket No. 74497. Argued January 14, 1986 (Calendar No. 2). Decided
August 7, 1986.

Eddie Thornton, Jr., brought an action in the Genesee Circuit
Court against Allstate Insurance Company, seeking first-party
no-fault benefits for injuries sustained during the armed rob-
bery by a passenger of the taxicab he was driving, and against
Nelvia Miller, the owner of the taxicab, for negligence. The
Attorney General and the Department of Social Services inter-
vened as plaintiffs, seeking recovery from Allstate of amounts
paid for the plaintiff's medical expenses under Medicaid. The
court, Philip C. Elliott, J., denied the defendant's motion for
summary judgment, and ordered Allstate to pay no-fault bene-
fits. The Court of Appeals, CYNAR, P.J., and J. H. GILLIS and
ANDERSON, JJ., affirmed in an opinion per curiam, holding that
since there was a direct causal connection between the use of
the motor vehicle and the plaintiff's injuries, the injuries are
compensable under the no-fault act (Docket No. 67926). The
defendant appeals.

In an opinion by Justice BOYLE, joined by Chief Justice
WILLIAMS and Justices BRICKLEY, CAVANAGH, and RILEY, the
Supreme Court held:

Injuries sustained by a taxicab driver in the course of an
armed robbery by a passenger were not injuries arising out of
the ownership, operation, maintenance, or use of a motor
vehicle as a motor vehicle for purposes of recovery of no-fault
personal injury protection benefits. The relation between the
injury and the use of the motor vehicle as a motor vehicle was
no more than incidental or fortuitous.

1. Personal injury protection benefits are payable for acciden-
tal bodily injury arising out of the ownership, operation, main-
tenance, or use of a motor vehicle as a motor vehicle. At the

REFERENCES

Am Jur 2d, Automobile Insurance § 354.

Assault, injury or death caused by assault as within coverage of no-
fault motor vehicle insurance. 44 ALR4th 1010.

What are accidents or injuries "arising out of ownership, mainte-
nance or use" of insured vehicle. 15 ALR4th 10.

time the no-fault act was enacted, case law provided that in order for an injury to be covered there must be more than a fortuitous connection between the injury and the use of the motor vehicle. Michigan case law decided subsequent to the enactment applied the standard in cases involving assaults with dangerous weapons within motor vehicles to generally deny recovery of no-fault benefits. In limiting personal injury protection benefits to injuries arising out of the use of a motor vehicle as a motor vehicle, the Legislature intended to provide coverage only where the causal connection between an injury and the use of a motor vehicle as a motor vehicle is more than incidental or fortuitous. The involvement of the vehicle in the injury should be directly related to its character as a motor vehicle.

2. In this case, the motor vehicle was not the instrumentality of the injuries. Rather, it was merely the situs of the armed robbery. The injury could have occurred whether the plaintiff used the motor vehicle as a motor vehicle or not. While the injuries were perhaps foreseeably identifiable with the occupational or commercial use of a motor vehicle as a taxicab, the relation between the injuries and the functional use of the motor vehicle as a motor vehicle was, at most, incidental or fortuitous. Because the injuries did not arise out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle, they are not within the scope of injuries covered by the no-fault act.

Justice LEVIN, joined by Justice ARCHER, concurring, stated that no adequate word formulation has evolved to construe the statutory phrase "arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle." In this case, the injuries inflicted on the plaintiff do not come within the intendment of the no-fault act. An assault on a person in an automobile who generally carries cash to conduct business is not a risk associated with motoring, but is a risk of such a business. There must be a causal connection between the injury and the use of the automobile as an automobile. It is not sufficient that an automobile was the physical situs of the injury.

Reversed.

135 Mich App 160; 351 NW2d 910 (1984) reversed.

OPINION OF THE COURT

1. INSURANCE — NO-FAULT — PERSONAL INJURY PROTECTION BENEFITS — MOTOR VEHICLES.

Personal injury protection benefits for injuries arising out of the

use of a motor vehicle as a motor vehicle are provided only where the causal connection between an injury and the use of the motor vehicle as a motor vehicle is more than incidental or fortuitous (MCL 500.3105[1]; MSA 24.13105[1]).

2. INSURANCE — NO-FAULT — PERSONAL INJURY PROTECTION BENEFITS — TAXICABS — ARMED ROBBERY.

Injuries sustained by a taxicab driver in the course of an armed robbery by a passenger were not injuries arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle, where the relation between the injury and the use of the motor vehicle as a motor vehicle was no more than incidental or fortuitous (MCL 500.3105[1]; MSA 24.13105[1]).

CONCURRING OPINION BY LEVIN, J.

3. INSURANCE — NO-FAULT — PERSONAL INJURY PROTECTION BENEFITS — ASSAULT — MOTOR VEHICLES.

*An assault on a person in an automobile who generally carries cash to conduct business is not a risk associated with motoring which would entitle the person assaulted to benefits under the no-fault act; rather, it is a risk of such a business (MCL 500.3105[1]; MSA 24.13105[1]).*

*René J. Ortlieb* for the plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Bernard Rosner,* Assistant Attorney General, for the intervening plaintiffs.

*Garan, Lucow, Miller, Seward, Cooper & Becker* (by *James L. Borin*); *James G. Gross,* of counsel, for the defendant.

Amici Curiae:

*Gromek, Bendure & Thomas* (by *Carl L. Gromek* and *Nancy L. Bosh*) for Auto Club Insurance Association, City of Detroit, Michigan Catastrophic Claims Association, and State Farm Mutual Automobile Insurance Company.

BOYLE, J. The sole issue on appeal in this case is

whether injuries sustained by Mr. Thornton during the armed robbery of a taxicab are injuries "arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle . . ." MCL 500.3105(1); MSA 24.13105(1), for purposes of no-fault personal injury protection benefits. We reverse the judgment of the Court of Appeals in the instant case because there was no more than a "but for," incidental, or fortuitous connection between the injuries inflicted upon Mr. Thornton and the "use of a motor vehicle *as a motor vehicle.*"

I

FACTS

Around 2:40 A.M. on the morning of December 2, 1978, Eddie Thornton, Jr., a forty-four-year-old taxi driver in Flint, Michigan, received a call directing him to pick up a fare. After Thornton arrived at the location, the passenger entered the cab and told Thornton the ostensible destination. As Thornton pulled away from the curb, the passenger drew a .25 caliber automatic pistol and shot Thornton in the right side of the neck. The robber then grabbed Thornton from behind and demanded money. After robbing Thornton of approximately $15 in change, the passenger, joined by an accomplice, dragged Thornton from the cab, stripped him of his shirt and coat, and left him lying between two houses. As a result of the gunshot wound, Mr. Thornton is completely paralyzed from the neck down and will require medical care for the rest of his life.[1]

---

[1] The "passenger" was subsequently apprehended and convicted of armed robbery and assault with intent to commit great bodily harm less than murder. He is serving a fifty- to seventy-five-year prison sentence.

The taxicab driven by Mr. Thornton was owned by Nelvia Miller, doing business as the Witness Cab Company, and was insured by Allstate under an automobile insurance policy providing first-party benefits and liability coverage. Mr. Thornton worked under an arrangement with Ms. Miller in which he drove the cab and shared the net receipts equally with her.[2]

Thornton seeks first-party personal injury protection (PIP) benefits under the policy issued to Ms. Miller. The Attorney General and the Department of Social Services intervened in the action to recover more than $140,000 paid under Medicaid for Thornton's expenses. Miller filed a third-party action against Allstate for a declaration of rights concerning coverage under the liability portion of the policy. Defendant moved for summary judgment, and the trial court held that Allstate was liable for first-party PIP benefits because Thornton's injuries arose out of his "use of the taxi as a taxi."[3] The Court of Appeals affirmed. *Thornton v Allstate Ins Co,* 135 Mich App 160; 351 NW2d 910 (1984).

## II

### LEGISLATIVE INTENT

The question in this case is whether gunshot

---

[2] The Witness Cab Company had no other cabs or employees. No monies were withheld for income taxes or social security taxes. The company did not pay unemployment insurance, nor did it carry a workers' compensation policy.

[3] The trial judge found for Miller on the liability insurance issue:

It is further Ordered and Declared that Allstate Insurance Company has a duty to defend this action on behalf of Nelvia Miller and to pay any damages that may later be assessed against her, if any, to the extent of their liability policy plus interest and all other legal additions thereto.

wounds inflicted upon a taxicab driver by a passenger in the course of an armed robbery are injuries covered by first-party personal injury protection benefits under a no-fault automobile insurance policy. Because this policy is issued pursuant to Michigan's no-fault insurance act, resolution of the case turns upon construction of MCL 500.3105(1); MSA 24.13105(1), which provides:

> Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter.

In construing a statute, it is this Court's duty to discern the intent of the Legislature in enacting the relevant provision. *O'Donnell v State Farm Mutual Automobile Ins Co,* 404 Mich 524, 544; 273 NW2d 829 (1979). We first look to the language of the statute itself. *Lamphere Schools v Lamphere Federation of Teachers,* 400 Mich 104, 110; 252 NW2d 818 (1977). In construing the meaning of statutory language, "[w]ords and phrases which have acquired meaning in the common law are interpreted as having the same meaning when used in statutes dealing with the same subject matter . . . ." *Thomas v Highway Dep't,* 398 Mich 1, 9; 247 NW2d 530 (1976). In *Miller v Auto-Owners Ins Co,* 411 Mich 633, 638-639; 309 NW2d 544 (1981), we observed:

> The phrase "arising out of the ownership, maintenance or use" of a vehicle has commonly been used in automobile insurance policies, and was apparently used in the no-fault act in awareness of that history.
> "Long prior to the no-fault movement the term 'arising out of the ownership, maintenance, or use'

of a motor vehicle appeared in automobile liability
insurance policies. This term has been adopted as
the basic causal relation test in all no-fault auto
insurance plans. Like its counterpart in workers'
compensation, it has been the subject of dispute,
but unlike the workers' compensation situation of
commencing with a new test, no-fault automobile
insurance will have the benefit of the body of case
law construing the term under the liability sys-
tem." O'Connell & Henderson, Tort Law, No-Fault
and Beyond (1975), p 362.

At the time our Legislature enacted the no-fault
insurance statute in 1973, no Michigan court[4] had
addressed the question of what injuries are cov-
ered within the phrase "arising out of the owner-

[4] In *Richland Knox Mutual Ins Co v Kallen,* 376 F2d 360 (CA 6,
1967), the United States Court of Appeals for the Sixth Circuit
construed the phrase "arising out of the use" of a vehicle in the
context of an exclusion from coverage in a homeowner's insurance
policy. The Court of Appeals panel approved District Judge Freeman's
opinion holding that the injury did not arise out of the use of a
vehicle because of an insufficient causal nexus between the injury and
the use of the vehicle:

In rendering his opinion from the bench, Judge Freeman
stated:
". . . The fact that Kallen was riding in the vehicle was not,
in and of itself, a cause of the accident. The cause of the
accident was the lighting of the firecracker by Kallen, followed
by his unsuccessful attempt to throw the firecracker out of the
car window. The lighting and the throwing of the firecracker
were not a causal result of Kallen's use of the car. His use of
the vehicle had no necessary connection with the accident.
Kallen's failure to throw the lighted firecracker away from the
girl sitting next to him before it exploded was the cause of the
injuries to the girl. The location of the parties in the car was
purely incidental. . . ."

It is concluded that the District Court properly disposed of this
issue. As Judge Freeman astutely noted, "certainly not every
tortious act occurring inside a vehicle constitutes use of that
vehicle; and . . . the lighting of a firecracker inside a car does
not involve the use of a car, any more than lighting a fire-
cracker during business hours is a business pursuit. [*Id.* at 364-
365.]

ship, maintenance or use of a motor vehicle."
However, at the time the no-fault law was enacted,
that phrase had a relatively well-established
meaning in insurance law. See Anno: *Automobile
liability insurance: What are accidents or injuries
"arising out of the ownership, maintenance, or
use" of an insured vehicle,* 89 ALR2d 150. All
courts agreed that some sort of causal connection
between the injury and the ownership, mainte-
nance, or use of the vehicle was required for
coverage. *Id.* at 153; see also 6B Appleman, Insur-
ance Law & Practice (Buckley ed), § 4317, p 357.
The dispute concerned what type of causal nexus
was required. *Id.;* see also Appleman, *supra,* pp
359-369.

In *Kangas v Aetna Casualty & Surety Co,* 64
Mich App 1; 235 NW2d 42 (1975), the Court of
Appeals interpreted the phrase "arising out of the
ownership, maintenance or use of the owned auto-
mobile" in the context of a pre-no-fault insurance
contract. The insured sought coverage for liability
arising out of an assault and battery perpetrated
by the insured and others when they stopped the
insured's car, exited, and physically assaulted a
person standing near the road. *Id.* at 4. In discuss-
ing whether the victim's injuries arose out of the
use of the insured's vehicle, the *Kangas* Court
surveyed national case law and, rejecting the pro-
posal that "but for" causation be sufficient,
adopted the following test for the requisite connec-
tion between an injury and the use of a motor
vehicle:

> [W]e conclude that while the automobile need
> not be the proximate cause of the injury, there
> still must be a causal connection between the
> injury sustained and the ownership, maintenance
> or use of the automobile and which causal connec-
> tion is more than incidental, fortuitous or but for.

The injury must be foreseeably identifiable with the normal use, maintenance and ownership of the vehicle. [*Id.* at 17.]

Under this test, the *Kangas* Court found that the injury did not arise out of the use of the insured's vehicle for purposes of the automobile insurance contract involved because there was an insufficient connection between the use of the vehicle and the assault and battery.

While the *Kangas* opinion was not available at the time the Michigan no-fault program was enacted, the bulk of the case law upon which *Kangas* relied was extant. This case law generally required more than "but for," incidental or attenuated causation. Summarizing the cases, 6B Appleman, *supra,* pp 367-368,[5] states:

> Accordingly, three rather interesting rules have been set up to determine the insurer's liability: 1. The accident must have arisen out of the inherent nature of the automobile, as such; 2. The accident must have arisen within the natural territorial limits of an automobile, and the actual use, loading, or unloading must not have terminated; 3. The automobile must not merely contribute to cause the condition which produces the injury, but must, itself, produce the injury.

Thus, the *Kangas* requirement that there be more than a "but for" connection between an injury and "the use of a motor vehicle" was well-represented in the case law at the time the Michigan no-fault act was enacted.

### III

#### CONTEMPORARY CASE LAW

Many Michigan Court of Appeals decisions have

[5] See also n 6.

dealt with whether persons assaulted while in a motor vehicle are entitled to no-fault benefits. These panels have applied the *Kangas* causation test and, generally, have found that the injury had an insufficient causal nexus with the normal use of a motor vehicle. In *Shaw v Allstate Ins Co,* 141 Mich App 331, 333-334; 367 NW2d 388 (1985), the Court of Appeals summarized this line of cases:

> Other decisions by this Court have held that a person assaulted while sitting in a motor vehicle is not entitled to no-fault benefits as herein sought. See, *e.g., Ciaramitaro v State Farm Ins Co,* 107 Mich App 68, 69-70; 308 NW2d 661 (1981), *lv den* 413 Mich 861 (1982) (plaintiff's decedent was killed by an armed assailant while conducting his normal door-to-door produce business from his truck); *Detroit Automobile Inter-Ins Exchange v Higginbotham,* 95 Mich App 213, 221-222; 290 NW2d 414 (1980), *lv den* 409 Mich 919 (1980) (plaintiff forced to the curb by her estranged husband, trapped in her car, and then shot by her husband several times by a revolver); *Hamka v Automobile Club of Michigan,* 89 Mich App 644, 645; 280 NW2d 512 (1979) (plaintiff struck in the nose by a pedestrian's fist while plaintiff was sitting in his car at an intersection); *O'Key v State Farm Mutual Automobile Ins Co,* 89 Mich App 526, 530; 280 NW2d 583 (1979), *lv den* 406 Mich 1014 (1979) (plaintiff shot in the hip while trying to evade an assailant entering the passenger side of his car).

Noting the conflict created by the opinion in the instant case, 141 Mich App 333, n 2, the *Shaw* Court still found that the shooting death of a passenger in a car during a robbery was not an injury covered by no-fault.

A review of the modern case law of other jurisdictions reveals that most other state courts interpreting no-fault statutes also require a causal relation greater than mere "but for" cause be-

tween the injury and the use of a motor vehicle. Most courts find that injuries caused by assaults with dangerous weapons are not sufficiently related to the use of a motor vehicle for no-fault benefits. See generally Anno: *Injury or death caused by assault as within coverage of no-fault motor vehicle insurance,* 44 ALR4th 1010. A review of these cases is instructive.

In *In re Manhattan & Bronx Surface Transit Operating Authority,* 71 AD2d 1004; 420 NYS2d 298 (1979), a bus driver was stabbed by a passenger when the driver refused to discharge the passenger at an unauthorized location. Analogizing to the common law,[6] the court construed the statutory language of "injury arising out of the use or operation of a motor vehicle" to bar recovery for the following reasons:

> The appellant was not injured by the bus or an appurtenance thereof. Although the refusal to use the bus in an unauthorized manner may have been a motivating factor in precipitating the assault, . . . the injury neither arose from the intrinsic nature of the bus, as such, nor did the bus, itself, produce the injury. Regardless of whether injuries arise out of the performance of one's

---

[6] The New York court stated:

> Three rules have been formulated to determine an insurer's liability under standard automobile liability policies. These rules are that

> "1. The accident must have arisen out of the inherent nature of the automobile, as such; 2. The accident must have arisen within the natural territorial limits of an automobile, and the accidental use, loading, or unloading must not have terminated; 3. The automobile must not merely contribute to cause the condition which produces the injury, but must, itself, produce the injury." (*Goetz v General Accident Fire & Life Assurance Corp,* 47 Misc 2d 67, 69; [262 NYS2d 305, 307 (1965)] citing 7 Appleman, Insurance Law and Practice [1962 ed], § 4317 . . . .) [*In re Manhattan & Bronx Surface Transit, supra* at 1005. Citations omitted.]

duties as an operator of a motor vehicle, first party no-fault insurance benefits are available only when a motor vehicle, by its use or operation, is the actual instrumentality which produces the injuries. [*Id.* at 1005.]

In *Camacho v Nationwide Ins Co,* 504 Pa 351; 473 A2d 1017 (1984), the Pennsylvania Supreme Court affirmed by per curiam order the judgment of the lower court that a driver, injured when an explosive device thrown into his car exploded in his hand, was not a victim of a "motor vehicle accident" as intended by the no-fault statute. The lower court reasoned, "We have here an intentional tort which has no connection with a motor vehicle accident other than that the injured party was operating a motor vehicle at the time of its commission." 314 Pa Super 21, 24; 460 A2d 353 (1983). Thus, the *Camacho* court limited the scope of covered injuries arising out of the use of a motor vehicle to those connected with motor vehicle accidents.[7]

In *Uzcatequi-Gaymon v New Jersey Manufacturers Ins Co,* 193 NJ Super 71; 472 A2d 163 (1984), the court interpreted "an accident involving an automobile" to exclude a shooting death during a robbery. The court found a lack of causal connection between the death and the automobile:

[I]n our view, while theft of the automobile may have been the ultimate object of the attack, from a legal viewpoint the automobile was not the cause of decedent's injuries and death. Rather, the cause

---

[7] Other Pennsylvania cases have the same result. See, e.g., *Rife v State Farm Mutual Automobile Ins Co,* 304 Pa Super 359; 450 A2d 720 (1982) (not covered because insured, shot by police during high speed chase, was injured by force external to any vehicle involved); *Erie Ins Exchange v Eisenhuth,* 305 Pa Super 571; 451 A2d 1024 (1982) (no recovery because passenger was injured by policeman's gunfire during arrest, not the operation of the vehicle).

of his injuries and death was the act of robbery committed by his assailants. That the automobile was the object of the robbery was merely an attending circumstance and did not transform this incident into "an accident involving an automobile" within the meaning of the New Jersey Automobile Reparation Reform Act (the no-fault law), N.J.S.A. 39:6A-1 *et seq.* [*Id.* at 73.]

Minnesota, interpreting the statutory language of injury arising "out of ownership, maintenance or use of the owned automobile," requires that the injury be " 'a natural and reasonable incident or consequence of the use of the vehicle.' " *Classified Ins Corp v Vodinelich,* 368 NW2d 921, 922-923 (Minn, 1985). The vehicle's use must have been for transportation purposes:

> The requirement that coverage will exist only for injuries resulting from uses for transportation purposes is intended to limit an automobile insurance company's liability to those risks the policy was intended to insure against, that is, against risks associated with "motoring." *See* Uniform Motor Vehicle Accident Reparations Act, § 1(a)(6) comment (1982). [*Id.* at 923.]

See also *State Farm Mutual Automobile Ins Co v Fernandez,* 567 F Supp 413 (D Hawaii, 1983) (stabbing precipitated by erratic driving merely incidental to use of vehicle for transportation purposes). The limiting effect of Minnesota's causality requirement is, however, unclear: In *Meric v Mid-Century Ins,* 343 NW2d 688 (Minn App, 1984), the Minnesota Court of Appeals held that a gunshot wound, inflicted when the driver of a van refused to give the van to a robber, arose out of the use of a motor vehicle because the assault would not have happened except for the robber's need for transportation.

The courts of Florida and North Dakota appear to have accepted a more attenuated causality requirement. In *Government Employees Ins Co v Novak,* 453 So 2d 1116, 1119 (Fla, 1984), the Florida Supreme Court held that a gunshot wound, inflicted by a pedestrian upon an insured who refused to give the pedestrian a ride, "arose out of " the use of a motor vehicle for purposes of the Florida no-fault statute because "[a]ll that is required is *some nexus* between the motor vehicle and the injury." (Emphasis added.) For the Florida court, the fact that the assault was related to the pedestrian's desire to ride in the car was a sufficient causal nexus. *Id.*

In *Weber v State Farm Mutual Automobile Ins Co,* 284 NW2d 299 (ND, 1979), a unanimous North Dakota Supreme Court found that the occupant of a truck, killed when another hunter's gun accidentally discharged, was covered by the North Dakota no-fault statute. The court reasoned that a causal relation between the injury and the operation of the vehicle was unnecessary under the no-fault legislation, *id.* at 301, and that there was no exclusion of hunting accidents from statutory coverage:

> It is foreseeable that accidents like the one in the instant case will happen and the Auto Accident Reparations Act should provide coverage absent an expressed legislative declaration to the contrary. [*Id.* at 303.]

IV

ANALYSIS

The statutory language in MCL 500.3105(1); MSA 24.13105(1), reveals a significant difference between the contractual language construed in *Kangas*—"arising out of the use of a motor vehi-

cle"—and the statutory language at issue here: "arising out of the . . . use of a motor vehicle *as a motor vehicle."* (Emphasis added.) It has been asserted by one commentator that the phrase "arising out of the use of a motor vehicle" should be construed as providing coverage whenever the use of a vehicle is involved, unless the insurer has explicitly limited the coverage:

> [I]f an injury arises out of any activity which includes the "use" of an automobile in any manner, liability protection should be afforded. *If the underwriter or insurer wants to limit its liability to situations which require that the automobile must be used as a vehicle,* they can clearly state so. [7A Appleman, *supra,* § 4500, pp 181-182. Emphasis added.]

In a similar fashion, the commentary to the Uniform Motor Vehicle Accident Reparations Act (UMVARA), 14 ULA 55-56, § 1, explains that injuries covered by the act are limited by § 1(a)(2), (6) to those arising out of the maintenance or use of a motor vehicle *as a motor vehicle:*

> [T]he requirement that use of the motor vehicle be "as a motor vehicle" qualifies the term so that both the tort exemption and the availability of basic reparation benefits are more nearly limited to activities whose costs should be allocated to motoring as part of an automobile insurance package. For example, it has no application to an injury which occurs when a person slips and falls inside a travel trailer which has been parked at a camp site.

While the commentary acknowledges the remaining ambiguity of the definition and the resultant possibility that some accidents "too far removed from the general activity of motoring" might be construed as being covered, the commissioners left

more specific definition in borderline cases to the courts.[8]

In *Miller v Auto-Owners Ins Co, supra,* this Court interpreted "arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle . . . ," MCL 500.3105(1); MSA 24.13105(1), to include injuries incurred in repairing parked cars in the context of the limited specific exceptions to the exclusion of incidents involving parked cars from no-fault liability provided in MCL 500.3106(1); MSA 24.13106(1).[9] In

---

[8] The commentary to UMVARA, 14 ULA 56, § 1, explains:

The indefiniteness of the defined term has produced litigation in cases arising under automobile liability policies. In some cases, in part because of a tendency to construe an ambiguous term against the interest of the companies drafting the policy, and, in part to assure a solvent source of payment to a person injured by an admitted wrongdoer, it is arguable that courts have included accidents too far removed from the general activity of motoring and that a narrower construction of the term would be more consistent with the policy of this Act. Other than specifying that injury arise out of maintenance or use "as a vehicle," it has not been possible to define the general concept more specifically, so borderline cases are left to the courts, as they have been under current automobile insurance policies.

[9] MCL 500.3106(1); MSA 24.13106(1) currently provides:

(1) Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle unless any of the following occur:

(a) The vehicle was parked in such a way as to cause unreasonable risk of the bodily injury which occurred.

(b) Except as provided in subsection (2), the injury was a direct result of physical contact with the equipment permanently mounted on the vehicle, while the equipment was being operated or used or property being lifted onto or lowered from the vehicle in the loading or unloading process.

(c) Except as provided in subsection (2) for an injury sustained in the course of employment while loading, unloading, or doing mechanical work on a vehicle, the injury was sustained by a person while occupying, entering into, or alighting from the vehicle.

reconciling the apparent conflict between §§ 3105 and 3106, this Court reasoned:

> Each of the exceptions to the parking exclusion thus describes an instance where, although the vehicle is parked, its involvement in an accident is nonetheless directly related to its character as a motor vehicle. The underlying policy of the parking exclusion is that, except in three general types of situations, a parked car is not involved in an accident *as a motor vehicle*. It is therefore inappropriate to compensate injuries arising from its non-vehicular involvement in an accident within a system designed to compensate injuries involving motor vehicles as motor vehicles. [*Miller, supra* at 640-641.]

In drafting MCL 500.3105(1); MSA 24.13105(1), the Legislature limited no-fault PIP benefits to injuries arising out of the "use of a motor vehicle *as a motor vehicle.*" In our view, this language shows that the Legislature was aware of the causation dispute and chose to provide coverage only where the causal connection between the injury and the use of a motor vehicle as a motor vehicle is more than incidental, fortuitous, or "but for." The involvement of the car in the injury should be "directly related to its character as a motor vehicle." *Miller v Auto-Owners, supra.* Therefore, the first consideration under MCL 500.3105(1); MSA 24.13105(1), must be the relationship between the

---

(2) Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle if benefits under the worker's disability compensation act of 1969, Act No. 317 of the Public Acts of 1969, as amended, being sections 418.101 to 418.941 of the Michigan Compiled Laws, are available to an employee who sustains the injury in the course of his or her employment while loading, unloading, or doing mechanical work on a vehicle unless the injury arose from the use or operation of another vehicle.

The restrictions in subsection (2) were added by 1981 PA 209.

injury and the vehicular use of a motor vehicle.[10] Without a relation that is more than "but for," incidental, or fortuitous, there can be no recovery of PIP benefits.

The connection in this case between the debilitating injuries suffered by Mr. Thornton and the use of the taxicab as a motor vehicle is no more than incidental, fortuitous, or "but for." The motor vehicle was not the instrumentality of the injuries. Cf. *Gajewski v Auto-Owners Ins Co,* 414 Mich 968; 326 NW2d 825 (1982). The motor vehicle here was merely the situs of the armed robbery—the injury could have occurred whether or not Mr. Thornton used a motor vehicle as a motor vehicle. Cf. *Saunders v DAIIE,* 123 Mich App 570; 332 NW2d 613 (1983), and *Mann v DAIIE,* 111 Mich App 637; 314 NW2d 719 (1981). The relation between the functional character of the motor vehicle and Mr. Thornton's injuries was not direct—indeed, the relation is at most incidental.

The plaintiff urges us to find that the taxicab was the "instrumentality of the injury" because the assailants used the nature of the operation of a taxicab business to gain access to the robbery victim. Plaintiff argues that the use of the taxicab as a motor vehicle was essential to the success of the robbery, and that Thornton's injuries are foreseeably identifiable with the normal use of a taxicab as a motor vehicle. We disagree with this formulation.

---

[10] We reject the focus that the Florida and Minnesota courts place upon the intent of the assailant as providing the requisite nexus between the injury and the use of the motor vehicle. See generally *Government Employees Ins Co v Novak, supra,* and *Meric v Mid-Century Ins, supra.* Under our no-fault legislation, intentionality is relevant where specified by the statute. See, e.g., MCL 500.3105(4); MSA 24.13105(4). However, for purposes of determining whether the requisite causation exists under § 3105(1), the proper focus is upon the relation between the injury and the use of a motor vehicle as a motor vehicle.

Plaintiff's argument errs because it equates the "use of a motor vehicle as a motor vehicle" with the use of a motor vehicle as a taxi. MCL 500.3105(1); MSA 24.13105(1), requires that the injury arise out of the use of the motor vehicle *as a motor vehicle.* In this case, the inherent nature of the use of a motor vehicle did not cause Mr. Thornton's injuries. Mr. Thornton was injured by a robber's gunfire. While the injuries were perhaps "foreseeably identifiable" with the occupational or commercial use of a motor vehicle *as a taxicab,* the relation of the gunshot wound to the functional use of a motor vehicle as a motor vehicle was at most merely "but for," incidental, and fortuitous. The mere foreseeability of an injury as an incident to a given use of a motor vehicle is not enough to provide no-fault coverage where the injury itself does not result from the use of the motor vehicle as a motor vehicle. Likewise, the mere absence of foreseeability would not necessarily preclude coverage.[11]

In this case, the injuries suffered by Mr. Thornton are not covered by PIP benefits under the no-fault policy because there was, at most, no more than an incidental and fortuitous causal relation between his injuries and the use of a motor vehicle as a motor vehicle.

V

CONCLUSION

The unfortunate and debilitating injuries suf-

---

[11] The introduction of the concept of foreseeability, which is essentially a fault concept, into MCL 500.3105(1); MSA 24.13105(1) might, indeed, run counter to one of the basic purposes of Michigan's no-fault legislation: to provide assured compensation for the broad range of accidental injuries which arise out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle, without regard to fault. See generally *Shavers v Attorney General,* 402 Mich 554, 578-580, 618-623; 267 NW2d 72 (1978); *Citizens Ins Co of America v Tuttle,* 411 Mich 536, 545-547; 309 NW2d 174 (1981).

fered by Mr. Thornton in this case had only a "but for," incidental, and fortuitous relation with his use of a motor vehicle as a motor vehicle. Because the injuries did not arise out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle, they are not within the type of injuries intended to be covered by MCL 500.3105(1); MSA 24.13105(1). Therefore, the decision of the Court of Appeals is reversed. We remand the case to the trial court for proceedings not inconsistent with this decision.

Williams, C.J., and Brickley, Cavanagh, and Riley, JJ., concurred with Boyle, J.

Levin, J. (*concurring*). I agree with the majority that Eddie Thornton may not recover no-fault benefits for the injuries he sustained as a result of the armed robbery committed by a passenger in his taxicab.

I write separately because I am not persuaded that the standard stated in the opinion of the Court or any other word formulation this Court would adopt, construing the statutory phrase "arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle," MCL 500.3105(1); MSA 24.13105(1), would assist in correctly resolving future controversies.

I

As indicated in the opinion of the Court, the statutory phrase, "arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle," consists of two clauses.

The first clause, "arising out of the ownership, operation, maintenance or use of a motor vehicle," was apparently adopted by the insurance industry

long before the enactment of the no-fault acts, and, as noted in the commentary to the Uniform Motor Vehicle Accident Reparations Act, has been the subject of an enormous amount of litigation.[1] The second clause is taken from the UMVARA.

All courts agree that some sort of causal connection between the injury and the ownership, maintenance, or use of the vehicle must be shown. In *Kangas v Aetna Casualty & Surety Co,* 64 Mich App 1; 235 NW2d 42 (1975), the Court of Appeals reviewed the pre-no-fault case law construing the first clause and concluded, as set forth in the opinion of the Court, that the causal relationship must be "more than incidental, fortuitous or but for."

The opinion of the Court suggests that the *Kangas* formulation accurately reflects the connection between the injury and the motor vehicle contemplated by the statutory phrase "arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle" and appears to adopt that formulation as the test for construing both the first and the second clauses.

This Court has not, heretofore, articulated a standard for either the first or second clause.[2] The case law and commentary yield a panoply of word formulations for the first clause.

Appleman states, "The words 'arising out of' . . . are ordinarily understood to mean originating from, incident to, or having connection with the

[1] 14 ULA 56, § 1.

[2] In *Miller v Auto-Owners Ins Co,* 411 Mich 633; 309 NW2d 544 (1981), this Court sought to reconcile the exclusion for parked vehicles in § 3106 with the provision for benefits in § 3105(1). The opinion of the Court explained that the exceptions to the parking exclusion "describe[ ] an instance where . . . [the vehicle's] involvement in an accident is nonetheless directly related to its character as a motor vehicle," *id.* at 640. The opinion did not suggest a word formulation or standard for the first or the second clause of § 3105(1).

use of the vehicle."[3] Appleman offers a summary of the pre-no-fault cases, stating:

> Accordingly, three rather interesting rules have been set up to determine the insurer's liability: 1. The accident must have arisen out of the inherent nature of the automobile, as such; 2. The accident must have arisen within the natural territorial limits of an automobile, and the actual use, loading, or unloading must not have terminated; 3. The automobile must not merely contribute to cause the condition which produces the injury, but must, itself, produce the injury.[4]

An annotation states that the "clause 'arising out of' has been held to mean 'originating from,' 'growing out of,' or 'flowing from.' "[5]

Another treatise discusses the continuing viability of four tests for determining the sufficiency of the causal link: "proximate cause," "causal connection," "involvement," and "but for."[6]

We hesitate to adopt any word formulation—the test stated in *Kangas,* or offered by Appleman, or any other—as an accurate and complete embodiment of the meaning of the first clause as applied in varying fact situations.

II

The second clause of the statutory phrase requires that the injury "aris[e] out of the . . . use of

---

[3] 6B Appleman, Insurance Law & Practice (Buckley ed), § 4317, pp 360-363.

[4] *Id.,* pp 367-368.

[5] Anno: *Automobile liability insurance: What are accidents or injuries "arising out of ownership, maintenance, or use" of an insured vehicle,* 89 ALR2d 150. Similarly, see 12 Couch, Insurance, 2d, § 45:61, p 294.

[6] Farrell, Hartig & Koatz, No Fault & Uninsured Motorist Automobile Insurance, § 9.20, pp 9-17 to 9-31.

a motor vehicle *as a motor vehicle."* (Emphasis supplied.)

*Kangas* concerned the first clause, not the second clause. Assuming that *Kangas* correctly reviewed and summarized the pre-no-fault case law construing the automobile policy language set forth in the first clause of the statutory definition, that may not bear on the correct construction of the second clause.

To adopt the case law construing the first clause as the test for the second clause would tend to eliminate the second clause as a further qualification or limitation.

The commentary to the UMVARA indicates that the second clause might or should be construed as a further limitation: "[T]he requirement that use of the motor vehicle be 'as a motor vehicle' qualifies the term so that both the tort exemption and the availability of basic reparation benefits are more nearly *limited to activities whose costs should be allocated to motoring* as part of an automobile insurance package."[7] (Emphasis supplied.)

In the instant case, the taxi was like a convenience store. Thieves recognize that taxis, like convenience stores, are potential sources of cash because taxi drivers generally carry cash to operate their businesses. I would, to decide this case, conclude that an assault on a person who generally carries cash to conduct business is not a risk associated with motoring, but is a risk of such a business. That risk of a cash business is not a risk whose cost should be allocated to motoring.

III

While it would be desirable to state a specific

---

[7] See n 1 *supra,* pp 55-56.

test to guide bench and bar, the authors of the UMVARA, in adding the second clause, "as a motor vehicle," said that they had not found it "possible to define the general concept more specifically, so borderline cases are left to the courts . . . ."[8]

Although the injuries inflicted on Thornton do not come within the intendment of the no-fault act, there might be a difference between the assault in the instant case and some other assaults in respect to the use of automobiles that might justify providing for recovery in other cases while recovery is denied in this case.

Suppose a driver of an automobile loses control of the automobile after being shot by a robber and collides with another vehicle; in such a case no-fault benefits might be awarded. Suppose an automobile breaks down or runs out of gas in the wintertime and the driver suffers frostbite or freezes to death; in such a case also no-fault benefits might be recoverable. If so, might not they also be recoverable if the person whose automobile breaks down or runs out of gas is assaulted walking to or from the gas station?

There must indeed be a causal connection between the injury and the use of the automobile as an automobile. It is not sufficient that an automobile was the physical situs of an injury. The test adopted by the majority from *Kangas,* that the causal relationship be "more than incidental, fortuitous or but for," might be read as barring recovery in a future case that is within the intendment of the no-fault act because the risk is one

[8] *Id.,* p 56.

associated with motoring. A word formulation adequate to resolve correctly future controversies has not as yet evolved.

ARCHER, J., concurred with LEVIN, J.