CAVANAGH, J.
(dissenting). I respectfully dissent because I believe that plaintiff is able to satisfy the requirement in MCL 500.3105(1) that his 2008 injuries “ar[ose] out of” his 2007 motor vehicle accident.
As the majority explains, there is no dispute that plaintiffs 2007 accident involved the use of a motor vehicle as a motor vehicle and that Progressive Michigan Insurance Company is statutorily obligated under *300 MCL 500.3105(1) to provide personal protection insurance (PIP) benefits for all injuries “arising out of” that accident, including plaintiffs seizure disorder.
This Court has explained that coverage under MCL 500.3105(1) is available “only where the causal connection between the injury and the use of a motor vehicle as a motor vehicle is more than incidental, fortuitous, or ‘but for.’ ” Thornton v Allstate Ins Co, 425 Mich 643, 659; 391 NW2d 320 (1986). Thus, the motor vehicle must be the “instrumentality” of the injury. Id. at 660.
Thornton’s application is relatively straightforward when faced with an acute injury. For example, if an insured suffers a broken arm while involved in a motor vehicle accident, it is clear that the motor vehicle was the instrumentality of the broken arm because that injury occurred at the moment of the accident. Accordingly, the causal connection between the broken arm and the use of a motor vehicle as a motor vehicle is more than incidental, fortuitous, or “but for.”
Although slightly more difficult, applying Thornton’s logic to some chronic injuries is also fairly straightforward. For example, if an insured suffered a kidney injury in a motor vehicle accident and, after a period of time, required a kidney transplant because of the continuing deterioration of the kidney, it is clear that the need for the transplant, although separated from the accident by time, would nevertheless constitute a progression of the injury that occurred in the accident. Accordingly, the causal connection between the need for the kidney transplant and the use of the motor vehicle as a motor vehicle would be more than incidental, fortuitous, or “but for.”
This case, however, presents a difficult issue because of the chronic, yet intermittent, nature of the injury that plaintiff suffered in the 2007 motor vehicle acci *301 dent. Accordingly, in order to properly apply Thornton and MCL 500.3105(1), it is necessary to understand the nature of a seizure disorder.
According to his physician, shortly after the 2007 accident plaintiff suffered a grand mal seizure. The physician testified that “posttraumatic seizure can happen at any time. You can have head trauma today, you can have a seizure from posttrauma [sic] two days later, you can have it a year later, you can have it the rest of your life.” According to the Mayo Clinic, grand mal seizures have two phases — tonic and clonic — that exhibit different symptoms. In the tonic phase, “[l]oss of consciousness occurs, and the muscles suddenly contract and cause the person to fall down.” Mayo Clinic, Grand Mai Seizure <http://www.mayochnic.com/health/grand-mal-seizure/ DS00222/DSECTION’symptoms> (accessed April 2, 2013) (emphasis added). In the clonic phase, “[t]he muscles go into rhythmic contractions, alternately flexing and relaxing. Convulsions usually last for less than two minutes.” Id.
Thus, a person with a seizure disorder may go long periods without exhibiting any signs of the disorder. However, even during those nonsymptomatic periods, the person nevertheless has a seizure disorder, and in plaintiffs case, the seizure disorder arose out of the use of a motor vehicle as a motor vehicle. Unlike an insured with a kidney injury whose condition consistently and predictably worsens over time, plaintiffs injury has resulted in sudden, unpredictable symptomatic episodes. And during those sudden symptomatic episodes, plaintiffs seizure disorder causes him to unexpectedly lose consciousness and muscle control and fall down.
As the majority’s analysis demonstrates, the intermittent nature of plaintiffs seizure disorder lends itself to the conclusion that any subsequent injury is caused *302 by an intervening accident rather than the seizure disorder itself. Specifically, the majority focuses on the activity that plaintiff was engaged in when he suffered the 2008 seizure and concludes that the motorcycle accident was an intervening event that caused plaintiffs 2008 injury. However, once the nature of a seizure disorder is properly understood, I believe the majority’s analysis is incorrect. Plaintiffs fall during his 2008 seizure was not an intervening cause; rather, it was an inextricable aspect of his seizure disorder, and any injuries sustained during the loss of consciousness and fall arose out of the motor vehicle accident that caused the seizure disorder. Simply put, loss of consciousness and falling down is part of a seizure. While I agree that the severity of the person’s injuries may be exacerbated depending on what the person is doing at the time of a seizure, that does not change the fact that a seizure disorder caused the person to unexpectedly fall and suffer an injury. Stated differently, plaintiffs seizure disorder cannot be separated from his 2008 fall and attendant injuries in any meaningful way. Because plaintiffs fall was an inextricable aspect of his seizure, I believe that plaintiff can satisfy MCL 500.3105(1).
In summary, I think that the 2007 motor vehicle accident bore more than an incidental, fortuitous, or “but for” connection to plaintiffs 2008 injuries because plaintiffs 2008 injuries are directly related to the seizure disorder, i.e., the 2008 injuries were an inextricable result of his seizure disorder. Accordingly, I dissent from the majority’s decision to grant summary disposition in favor of Progressive.
VIVIANO, J., took no part in the decision of this case.