# STATE OF MICHIGAN

# COURT OF APPEALS

CHRISETHCARE HOME HEALTH CARE
SERVICES INCORPORATED,

UNPUBLISHED
May 26, 2016

Plaintiff-Appellant,

v

No. 325186
Wayne Circuit Court
LC No. 14-003768-NF

BRISTOL WEST INSURANCE COMPANY,

Defendant-Appellee.

Before: MURPHY, P.J., and CAVANAGH and RONAYNE KRAUSE, JJ.

PER CURIAM.

Plaintiff Chrisethcare Home Health Care Services Incorporated appeals by right the trial court's order granting defendant Bristol West Insurance Company's motion for summary disposition, pursuant to MCR 2.116(C)(10), in this case involving provider benefits under the Michigan No-Fault Act, MCL 500.3101, *et seq*. We affirm in part, reverse in part, and remand.

This matter arises out of injuries suffered by Curtis Gilkey on August 13, 2007. Gilkey was driving his vehicle when he sustained a gunshot wound to his spine; the bullet passed through the car and his seat. Gilkey retained no memory of the incident itself, but after being shot, his vehicle crashed into a building at a high speed. He was discovered and transported to a hospital. Gilkey's spinal injury left him paralyzed, and he also suffered a traumatic closed-head brain injury and other less-significant injuries. Gilkey has subsequently required attendant care, which has been provided by plaintiff. Plaintiff seeks compensation from defendant, a no-fault insurance provider, for the time period from August 1, 2013, to February 28, 2014. Defendant did not seriously dispute Gilkey's injuries or his need for attendant care, but asserts that his need for attendant care is solely related to the gunshot injury to his spine, which defendant contends does not "aris[e] out of the . . . use of a motor vehicle as a motor vehicle" under MCL 500.3105(1). On appeal, defendant also argues that even the head injury would not satisfy the statutory requirements because it was precipitated by the gunshot assault.

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, we consider all evidence submitted by the parties in the light most favorable to the non-moving party and grant summary

-1-

disposition only where the evidence fails to establish a genuine issue regarding any material fact. *Id*. at 120. A party opposing a motion for summary disposition must establish more than a mere possibility that a claim could be supported by evidence at trial. *Id*. at 121. However, the nonmoving party is entitled to the resolution of all reasonable inferences and all reasonable doubts in their favor. *Bertrand v Alan Ford, Inc*, 449 Mich 606, 617-618; 537 NW2d 185 (1995). At a summary disposition stage of proceedings, the courts must assess credibility or make findings of fact. *Soderberg v Detroit Bank & Trust Co*, 126 Mich App 474, 479; 337 NW2d 364 (1983).

Both parties presented evidence from various doctors. Defendant presented a deposition from Shivakumar R. Deva, M.D., an internal medicine doctor with no board certifications or other specialties, who worked as a physician for Visiting Physicians. Dr. Deva had been Gilkey's primary treating physician since February 7, 2014; prior to that, another Visiting Physicians doctor had treated Gilkey. Dr. Deva opined that Gilkey had mild memory issues due to his head trauma, but his attendant care was necessitated only by Gilkey's paraplegia. Dr. Deva did not have access to records predating becoming Gilkey's primary treating physician, but when showed records during his deposition, he opined that those records appeared to indicate that the gunshot wound was the cause of that paraplegia.

Plaintiff presented medical reports that had been prepared by three specialists who had treated Gilkey. Richard L. Weiss, Ph.D., L.P.C., a licensed psychologist and consulting neuropsychologist, conducted two neuropsychological examinations of Gilkey: the first was conducted between March 20 and April 17, 2008; the second was conducted on September 11, 2014. In 2008, Dr. Weiss found "neuropsychological deficits consistent with closed head injury" and numerous cognitive impairments. He recommended that Gilkey "should receive assistance with tasks in which memory deficits may pose potential harm to himself or others . . . [such as] managing medication, using a stove, etc." In 2014, Dr. Weiss found that Gilkey may have been exaggerating his emotional problems, but that he otherwise displayed genuine efforts, and although he had improved his "perceptual organization and processing speed," his "logical memory and word pairs subtests" had undergone "a considerable decline." Dr. Weiss concluded that Gilkey "continu[ed] to present neuropsychological deficits consistent with closed head injury . . . primarily manifest in severe memory deficits and a general depression of intellectual processes," although he suspected that the decline since 2008 was more likely the result of factors other than the injury. Dr. Weiss reiterated Gilkey's need for assistance.

Plaintiff also presented a June 3, 2008, report prepared by Steven R. Hinderer, MD, regarding Gilkey's progress as an outpatient at the Rehabilitation Institute of Michigan. Dr. Hinderer noted that Gilkey had suffered a traumatic brain injury and attendant cognitive deficits. Dr. Hinderer also noted that Gilkey reported difficulties with living on his own due to his memory, "including occasionally leaving the stove on." Dr. Hinderer ordered 24-hour attendant care. Plaintiff also presented a report from Richard A. Atkins, M.D., a psychiatrist, who treated Gilkey and stated on November 4, 2008, that Gilkey was "diagnosed with post traumatic brain syndrome, cognitive problems secondary to traumatic brain injury, and adjustment disorder." On October 28, 2008, Dr. Atkins ordered 16 to 24 hour a day supervision for Gilkey.

This appeal presents two issues, one factual and one legal. Factually, whether Gilkey's attendant care was necessitated by *only* his paraplegia, or whether his head injury also

contributed to that need. There is no dispute that the attendant care was, in fact, necessary, or as to what injuries Gilkey sustained. Legally, whether Gilkey's need for attendant care was due to injuries that "ar[ose] out of the . . . use of a motor vehicle as a motor vehicle." There is no evidence in the record to suggest that Gilkey's paraplegia was *directly* caused by anything other than a bullet transecting his spine. Defendant also contends that Gilkey's head injury was caused by the assault rather than having a sufficient nexus with the vehicle.

As an initial matter, we note that the trial court's disregard of Dr. Weiss's reports on the grounds that Dr. Weiss had not been treating Gilkey on an ongoing basis and that the reports either predated or postdated the relevant time period was wholly inappropriate for summary disposition purposes. Circumstantial evidence and inferences are not only proper, they are mandatory at this stage, and defendant simply goes too far in arguing that any conclusions regarding the interim would be speculative. The extent to which the reports are consistent strongly implies that Gilkey's situation in the interim was stable and did not undergo any significant changes. Furthermore, the reports of Dr. Hinderer and Dr. Atkins support Dr. Weiss's findings in 2008, and therefore also his similar findings in 2014. This is ample evidence for drawing conclusions about the interim for purposes of surviving a summary disposition motion.

The trial court erred in disregarding plaintiff's evidence merely because it did not directly address the relevant time period. Plaintiff's medical reports provide inferential evidence, sufficient to create a genuine question of fact, that Gilkey needed at least some attendant care because of the head injury independent of his spine injury.

However, the legal question of whether any of Gilkey's injuries constitute an "injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle," MCL 500.3105(1), remains. The parties agree that the vehicle must be more than "merely the situs" of the injury under the statute. See *Thornton v Allstate Ins Co*, 425 Mich 643, 660; 391 NW2d 320 (1986). However, our Supreme Court has not definitively clarified how *much* more of a connection there must be between the use of a motor vehicle and the injury, beyond the need for it to be "'more than incidental, fortuitous, or but for.'" See *Oostdyk v Auto Owners Ins Co*, 498 Mich 913, 913; 870 NW2d 926 (2015), quoting *Thornton*, 425 Mich at 646. Our Supreme Court has explicitly rejected "the 'almost any causal connection' standard." *Id*. Nevertheless, the logical implication is that our Supreme Court has established a minimum baseline, so essentially any connection between the injury and the use of the motor vehicle *beyond* being merely "incidental, fortuitous, or but for" is sufficient.

It is therefore patently obvious that Gilkey's head injury arose out of the use of his motor vehicle as a motor vehicle. Whatever the cause of the accident, he injured his head *in an automobile accident*. Defendant's attempt to divorce the head injury from the use of a motor vehicle as a vehicle is nonsensical. By defendant's logic, no injury sustained in an automobile accident could ever be said to arise out of the use of a motor vehicle as a motor vehicle as long as the cause of the accident could be attributed to literally anything other than a loopback reference to the accident itself. Consequently, Gilkey's head injury arose out of the use of the motor vehicle as a motor vehicle, and because there was a question of fact whether any of his attendant care needs arose out of the head injury, the trial court erred in granting summary disposition.

-3-

In contrast, we note that plaintiff, refreshingly, does not attempt to persuade us that Gilkey's gunshot wound somehow arose out of the use of a motor vehicle as a motor vehicle. Such an effort would be as nonsensical as defendant's attempt to persuade us that the head injury does not. There is nothing about being the victim of a shooting that could be said to be special about operating a car. Being intentionally shot is not a normal risk of operating a motor vehicle, and as defendant points out, Gilkey could have been shot anywhere. That he was shot while driving meant either that he was deliberately targeted, which could have happened anywhere, or he happened to be in the wrong place at the wrong time, which again could have happened anywhere. We suspect that crashing immediately after being shot could not have improved his likelihood of recovering, but there is no evidence in the record to that effect. We therefore conclude that the vehicle was the mere incidental situs of Gilkey's gunshot injury. The trial court properly granted summary disposition to the extent of benefits based on the gunshot injury.

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. Because plaintiff did not attempt to argue on appeal that it was entitled to attendant care benefits arising out of Gilkey's gunshot injury, plaintiff prevailed in full and is entitled to tax costs pursuant to MCR 7.115(A).

/s/ William B. Murphy
/s/ Mark J. Cavanagh
/s/ Amy Ronayne Krause

-4-