*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KENNETH KOVACH,

　　　　　Plaintiff-Appellant,

v

CITIZENS INSURANCE COMPANY,

　　　　　Defendant-Appellee,

and

CHRISTOPHER ALLEN SWANK,

　　　　　Defendant.

UNPUBLISHED
March 2, 2023

No. 359474
Macomb Circuit Court
LC No. 2021-000205-NF

Before: RICK, P.J., and M. J. KELLY and RIORDAN, JJ.

PER CURIAM.

In this no-fault insurance case, plaintiff Kenneth Kovach appeals by leave granted[1] the order granting partial summary disposition under MCR 2.116(C)(10) in favor of defendant[2] Citizens Insurance Company. We affirm.

## I. BACKGROUND

Plaintiff suffered injuries on February 26, 2020, when the motor vehicle in which he was a passenger was rear-ended by a motor vehicle driven by defendant Christopher Swank. The following day, plaintiff went to the hospital with complaints of a headache, neck pain, and shoulder pain. Plaintiff was diagnosed with a concussion, an unspecified headache, and a neck strain. A

---

[1] *Kovach v Citizens Ins Co*, unpublished order of the Court of Appeals, entered April 7, 2022 (Docket No. 359474).

[2] Defendant Christopher Allen Swank is not a party to this appeal. All references to "defendant" are to Citizens Insurance Company only.

-1-

CT scan of plaintiff's head did not reveal any hemorrhages or other abnormalities. An MRI of plaintiff's neck that was taken approximately one month later revealed a "[s]ignificant attenuated flow void involving plaintiff's right vertebral artery."

According to plaintiff's deposition testimony, he fell on three occasions in May 2020. He first fell while picking dandelions. He fell a second time in his bathroom after experiencing dizziness. Plaintiff fell a third time after he stood up from a sitting position in a swivel chair and experienced vertigo. As plaintiff fell he struck his head on the wall "pretty hard." Plaintiff's headaches worsened thereafter. On July 2, 2020, plaintiff underwent another CT scan of his head. The CT scan revealed a right subdural hematoma, which is bleeding in the subdural layer of the brain. Plaintiff believed that the hematoma was caused when he struck his head against the wall. On July 20, 2020, plaintiff underwent a surgical procedure to evacuate the hematoma.

On January 19, 2021, plaintiff commenced this action for first-party personal protection insurance (PIP) benefits against defendant, his insurer. Defendant moved for partial summary disposition under MCR 2.116(C)(10). Defendant argued that because plaintiff's subdural hematoma was caused by his fall, the hematoma was too far removed from the motor vehicle accident to satisfy the "arising out of the ownership, operation, maintenance or use of a motor vehicle" language of MCL 500.3105(1). After a hearing, the trial court agreed and entered an order granting defendant's motion for partial summary disposition.

## II. ANALYSIS

Plaintiff argues that the trial court erred by granting partial summary disposition in favor of defendant because a genuine issue of fact existed regarding whether the subdural hematoma he suffered in his May 2020 fall arose out of the February 2002 accident for purposes of MCL 500.3105(1). We disagree.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Shinn v Mich Assigned Claims Facility*, 314 Mich App 765, 768; 887 NW2d 635 (2016). In reviewing a motion under subrule (C)(10), this Court considers the pleadings, affidavits, depositions, and other evidence in the light most favorable to the nonmoving party. *Id*. A motion under subrule (C)(10) "may only be granted when there is no genuine issue of material fact." *El-Khalil*, 504 Mich at 160. Interpretation of a statute constitutes a question of law that is also reviewed de novo. *Shinn*, 314 Mich App at 768.

MCL 500.3105(1) states, "[u]nder personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter." Plaintiff argues that he is entitled to PIP benefits for his subdural hematoma. However, even viewing the evidence in the light most favorable to plaintiff, there is no genuine issue of material fact concerning whether plaintiff's subdural hematoma arose out of the "ownership, operation, maintenance or use of a motor vehicle as a motor vehicle."

*McPherson v McPherson*, 493 Mich 294; 831 NW2d 219 (2013), controls. In that case, the "[p]laintiff developed a neurological disorder as a result of injuries sustained in a 2007 motor

vehicle accident." *Id*. at 295. In 2008, the plaintiff suffered a "seizure consistent with that [neurological] disorder" while riding his motorcycle. He lost control of the motorcycle and was involved in another motor vehicle accident. *Id*. The plaintiff severely injured his spinal cord in the 2008 accident but did not claim that he was entitled to PIP benefits for his spinal cord injury as a result of the 2008 accident. *Id*. at 295-296. Instead, the plaintiff "claimed that he was entitled to no-fault benefits for the spinal cord injury as a result of the 2007 incident," claiming that his injury arose out of the earlier accident "for the purposes of MCL 500.3105(1)." *Id*. at 296.

The Court emphasized that under the applicable standard for causation, "an injury arises out of the use of a motor vehicle as a motor vehicle when the causal connection between the injury and the use of the motor vehicle as a motor vehicle is more than incidental, fortuitous, or 'but for.' " *Id*. at 297, quoting *Thornton v Allstate Ins Co*, 425 Mich 643, 659; 391 NW2d 320 (1986) (quotation marks omitted). The Court concluded that there was not enough of a causal connection between the 2007 accident and the plaintiff's spinal cord injury to meet the "arising out of" requirement, reasoning:

> Plaintiff did not injure his spinal cord while using the vehicle in 2007. Rather, he injured it in the 2008 motorcycle crash, which was caused by his seizure, which was caused by his neurological disorder, which was caused by his use of a motor vehicle as a motor vehicle in 2007. Under these circumstances, we believe that the 2008 injury is simply too remote and too attenuated from the earlier use of a motor vehicle to permit a finding that the causal connection between the 2008 injury and the 2007 accident is more than incidental, fortuitous, or 'but for.' [*Id*. at 297-298 (quotation marks and citation omitted).]

The Court further explained its reasoning in a footnote, stating:

> The dissent erroneously focuses on the existence of a causal connection between the 'seizure' and the 'fall,' rather than on the causal connection between the 2008 spinal cord injury and the 2007 accident. Although we agree with the dissent that for purposes of this appeal it is assumed as fact that plaintiff's second seizure and resultant fall came about as a result of the neurological disorder suffered in the first accident, it does not follow, as the dissent concludes, that 'the 2008 injuries were an inextricable result of [plaintiff's] seizure disorder' as well. Indeed, had plaintiff been in bed or on the couch when he had the seizure, the 'inextricable' injury would not have occurred. [*Id*. at 298 n 5 (citations omitted).]

In both *McPherson* and this case, a second incident caused the relevant injury. Here, plaintiff did not suffer a subdural hematoma in the motor vehicle accident. Rather, he developed the hematoma after falling and hitting his head, which was caused by his vertigo, which was caused by his use of a motor vehicle in February 2020. In other words, the facts alleged by plaintiff only support a finding that the "first *injury* directly caused the second *accident*, which in turn caused the second injury." *McPherson*, 493 Mich at 298-299.

Under *McPherson*, there is not a sufficient connection between the subdural hematoma and the motor vehicle accident. Even if plaintiff's fall was caused by vertigo caused by the motor vehicle accident, the accident would not be more than an incidental, fortuitous, or "but for" cause

of his subdural hematoma.  Therefore, plaintiff's subdural hematoma did not "arise out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle" pursuant to MCL 500.3105(1).

Plaintiff attempts to distinguish *McPherson* by arguing that his subdural hematoma is a natural and direct consequence of the motor vehicle accident and that there was no intervening event that led to his injury.  Plaintiff relies on the report of a medical expert that was submitted for the first time with plaintiff's motion for reconsideration.  The expert, Francisco Diaz, M.D., opined that (1) plaintiff's vertigo resulted from the motor vehicle accident, (2) that vertigo caused plaintiff to fall and suffer a subdural hematoma, and (3) that the motor vehicle accident was therefore the "originating event from where the cascade of medical complications above described arose from." Dr. Diaz opined, "[i]n other words, if it [were not] for the collision [plaintiff] would not have sustained the complications that led eventually to neurological surgery."  We are, legally speaking, not convinced.  The expert's report does not distinguish this case from *McPherson*.  Rather, Dr. Diaz's report confirms the attenuated connection between the motor vehicle accident and plaintiff's subdural hematoma.

Affirmed.  Defendant, being the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Michelle M. Rick
/s/ Michael J. Kelly
/s/ Michael J. Riordan